LUCY MILAZZO-PANICO *v.* EDWARD PANICO
(AC 27215)

Bishop, Harper and Lavine, Js.

Submitted on briefs May 25—officially released August 28, 2007

*William H. Cashman* filed a brief for the appellant (defendant).

*Howard M. Gould* filed a brief for the appellee (plaintiff).

LAVINE, J. The defendant, Edward Panico, appeals from the judgment of the trial court dissolving his marriage to the plaintiff, Lucy Milazzo-Panico. The defendant claims that, in fashioning the child support order, the court improperly determined (1) his earning capacity and (2) the plaintiff's earning capacity. We disagree and, accordingly, affirm the judgment of the trial court.

Following a trial on October 12, 2005, the court dissolved the parties' marriage on December 8, 2005, rendering an oral decision in which it found the following facts. The parties were married on August 14, 1984, at City Island, New York, and had six children, three of whom were minors residing with the plaintiff at the time of the dissolution. After they were married, the parties operated a carting and demolition business in New York until 1988, when the defendant became a police officer for the city of New York. In 1994, the defendant resigned from the police department after he was convicted of illegal receipt of gratuities.

From 1994 until October 31, 2002, the defendant performed "amorphous" duties for his father, including driving and collecting rents. The defendant testified that

in return for providing these services for his father, his father would "help him out by providing cash and property to the defendant and his family." The defendant's father's "largess was sufficient to support this rather large family until the father's demise in 2002." In the days before his death in October, 2002, the defendant's father transferred real estate, bank accounts and stock to the defendant. At the time of the dissolution, the transfer of real property had not been resolved by the estate, and none of the cash had been devised by will or administered by a Probate Court order. The defendant testified that he was unable to recall the amount and source of the accounts that he had received from his father. He admitted to selling real estate he did not own and which, in fact, was an estate asset. The court stated that "[t]here's virtually no way of tracking funds which were received by the [defendant] from his father, both while he was alive and after his death, except to note that the [defendant] did not need to seek employment from 1994, and until this action commenced, was supporting a wife and six children."

The plaintiff worked primarily as a homemaker during the marriage and raised the children. She was employed by a casino, however, from August, 2001, to October, 2004. The plaintiff testified that she began her employment at the casino as a blackjack dealer, with a salary of approximately $600 per week or $31,200 per year. She later was given supervisory responsibilities, which resulted in an increase in her salary. When she left her employment at the casino, she was earning a gross yearly salary of approximately $42,000. The plaintiff testified on both direct and cross-examination that were she to return to her employment at the casino, she would not be able to begin as a supervisor but would have to "start at the bottom and work up again."

Both parties submitted financial affidavits. The plaintiff indicated that she was not employed. The defendant

indicated on his affidavit that he was employed as an assistant to the manager at a restaurant with a gross weekly income of $320 or yearly income of $16,640. He reported $439.77 in weekly expenses.

Before rendering its financial orders, the court stated the following. "Both parties are currently underemployed. It may be especially difficult in determining an earning capacity of the defendant, inasmuch as he has not been a real W-2 employee since he left the New York City police department." The court then concluded that "it would not be unreasonable for this court to determine that both parties have an earning capacity of at least $30,000 per year, gross . . . ." After considering the family support guidelines, the court ordered the defendant to pay the plaintiff $171 per week in child support. This appeal followed. Additional facts will be set forth as necessary.

Our standard of review in family matters is well settled. "An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . It is within the province of the trial court to find facts and draw proper inferences from the evidence presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . [T]o conclude that the trial court abused its discretion, we must find that the court either incorrectly applied the law or could not reasonably conclude as it did. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm

conviction that a mistake has been committed." (Internal quotation marks omitted.) *Elia* v. *Elia*, 99 Conn. App. 829, 831, 916 A.2d 845 (2007).

The defendant first claims that the court improperly relied on his earning capacity rather than his actual earnings when calculating child support. He argues that "no viable reason exists to find an earning capacity of $30,000 as opposed to his actual earnings of $16,640." We disagree.

"It is well established that the trial court may under appropriate circumstances in a marital dissolution proceeding base financial awards on the earning capacity of the parties rather than on actual earned income. . . . Earning capacity, in this context, is not an amount which a person can theoretically earn, nor is it confined to actual income, but rather it is an amount which a person can realistically be expected to earn considering such things as his vocational skills, employability, age and health." (Internal quotation marks omitted.) *Elia* v. *Elia*, supra, 99 Conn. App. 833. "[I]t also is especially appropriate for the court to consider whether the defendant has wilfully restricted his earning capacity to avoid support obligations . . . ." (Citation omitted; internal quotation marks omitted.) *Weinstein* v. *Weinstein*, 280 Conn. 764, 772, 911 A.2d 1077 (2007). Moreover, "[l]ifestyle and personal expenses may serve as the basis for imputing income where conventional methods for determining income are inadequate." (Internal quotation marks omitted.) *Carasso* v. *Carasso*, 80 Conn. App. 299, 304, 834 A.2d 793 (2003), cert. denied, 267 Conn. 913, 840 A.2d 1174 (2004).

In the present case, the court had evidence before it from which it reasonably could conclude that the defendant's earning capacity was more than the actual income claimed on his financial affidavit. The financial affidavit reported his net weekly expenses at $439.77,

which amounts to roughly $22,000 per year. Moreover, throughout the trial, the court heard extensive testimony regarding the parties' lifestyle prior to the dissolution and the defendant's ability to support his family for more than eight years despite the fact that he never was formally employed. The defendant testified that he paid cash for the marital residence and eight motor vehicles. The defendant also testified that prior to the parties' separation, he kept $350,000 in a safe in the marital residence. The court noted that the defendant was unable to account for and the court was unable to trace large amounts of money transferred to him by his father and that "there are considerable sums of money that may or may not be truly missing." The defendant's expenses as listed on his affidavit were in excess of his claimed income, and there was ample evidence presented with regard to the defendant's ability to provide for his family in the past. We conclude, therefore, that the court's imputing to him an earning capacity of at least $30,000 was neither contrary to the law nor clearly erroneous.

We similarly are unpersuaded by the defendant's claim that the court improperly determined the plaintiff's earning capacity. The defendant argues that the court's finding that the plaintiff's earning capacity was $30,000 is flawed because the plaintiff was a supervisor at the casino earning $42,000 per year when she left her employment.

As stated previously, earning capacity is determined on the basis of what a party reasonably may be expected to earn. See *Elia* v. *Elia*, supra, 99 Conn. App. 833. In concluding that the plaintiff's earning capacity was $30,000, the court clearly credited the plaintiff's testimony that she could not return to her employment as a supervisor but would need to "start at the bottom [as a dealer] and work her way up again." "[W]e do not retry the facts or evaluate the credibility of witnesses.

. . . It is the sole province of the trial court to weigh and interpret the evidence before it and to pass upon the credibility of witnesses." (Citation omitted; internal quotation marks omitted.) *Doody* v. *Doody*, 99 Conn. App. 512, 519, 914 A.2d 1058 (2007). Accordingly, the court's finding regarding the plaintiff's earning capacity was not clearly erroneous.[1]

As the court's findings regarding the parties' earning capacities were not clearly erroneous, we conclude that the court did not abuse its discretion in rendering its child support order.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[1] In support of his argument, the defendant urges us to analogize this case to several cases in which this court reversed a judgment of dissolution because it determined that financial orders were based on "faulty mathematics." Our review of the record reveals, however, that the court did not make any mathematical errors when determining the parties' earning capacities. We conclude, therefore, that the present case and the cases cited by the defendant are factually dissimilar.