## DANIEL LYNCH *v.* LAURIE LYNCH
### (AC 31651)

DiPentima, C. J., and Robinson and Flynn, Js.

Argued November 16, 2011—officially released April 24, 2012

*William F. Gallagher,* for the appellant (plaintiff).

*Samuel V. Schoonmaker IV,* with whom, on the brief, were *Wendy Dunne DiChristina* and *Stanley M. Goldstein,* for the appellee (defendant).

*Opinion*

DiPENTIMA, C. J. The plaintiff, Daniel Lynch, challenges a myriad of financial orders entered by the trial court at the time of the dissolution judgment and thereafter. In his appeal, the plaintiff claims error in the court's disposition of two pendente lite motions and three of the financial orders of the judgment. In his four amended appeals, the plaintiff raises five additional claimed errors in various postjudgment orders. We reverse in part the judgment of the trial court.

The record reveals the following relevant facts and procedural history. The parties were married in 1992, and two children were born of the marriage.[1] On September 14, 2009, the court rendered judgment dissolving the marriage on the ground of irretrievable breakdown. The court found that the plaintiff did not have a great deal of financial success, and that the defendant, Laurie Lynch, annually earned in the $70,000 to $80,000 range. The court also found that the plaintiff did not want to sell the marital home until the parties' oldest child graduated from high school, while the defendant wanted the marital home to be sold immediately because the parties financially could not maintain the home and foreclosure of the existing mortgage was imminent.

The court further found that while the family lived frugally, the parties' assets and income as well as expenditures "leave little light at the end of the tunnel."

[1] The parties executed a parenting plan that the court approved and attached as exhibit A to its memorandum of decision. Custody is not at issue in this appeal.

Although the plaintiff has published a book and has had some financial gain therefrom, the court found that the chances of reversing the parties' financial plight were not encouraging. The court noted that the parties do not communicate with one another, but both wanted to remain in the house until it was sold; the court stated that it would not upset that arrangement. The court concluded that there was no viable alternative to an immediate sale of the marital home.

After making its findings, the court addressed the defendant's motion for modification dated February 4, 2009.[2] This motion asserted that the parties' prior stipulation that each party pay equally certain household and children's expenses[3] should be modified on the basis of an increase in the plaintiff's income. The court agreed and ordered the plaintiff to pay 60 percent and the defendant to pay 40 percent of the obligations set forth in the stipulation.

The court then distributed the assets and liabilities of the marital estate and issued a number of financial orders. The court ordered that the plaintiff pay periodic alimony to the defendant at the rate of $200 per week and child support to the defendant at the rate of $135 per week. The court also ordered that the marital home immediately be placed on the market for sale and that the net proceeds from the sale be divided equally between the parties. The court ordered that the plaintiff pay to the defendant 30 percent of the value of his

---

[2] At trial, the parties stipulated that this motion would be applied retroactively if granted.

[3] The defendant's motion referenced a paragraph of the stipulation, approved by the court on December 11, 2008, providing that the parties pay equally the following: "[M]ortgage including real estate taxes and homeowner's insurance, all children's expenses, all utilities, life, health and auto insurance premiums and groceries for the family. Each party shall pay their own auto expenses except for auto insurance. Parties must agree on children's expenses. No liquor or wine is to be included in the groceries."

unsold books within thirty days of the date of dissolution of the marriage, and that the plaintiff pay the defendant 30 percent of all income that he receives in the future from the sale of the books. Finally, the court ordered that the plaintiff pay $15,000 toward the defendant's attorney's fees incurred during pretrial and trial proceedings.[4] The plaintiff then filed an appeal from the judgment of dissolution.

Thereafter, the court ordered that the plaintiff pay to the defendant the sum of $7500 toward her appellate attorney's fees. On November 24, 2009, the defendant filed a postjudgment motion for sole use and possession of the marital home, which the court granted. In December, 2009, and May, 2010, the plaintiff filed postjudgment motions for modification of certain financial orders, which the court denied. In July, 2010, the defendant filed a postjudgment motion for modification seeking an increase in support, which the court granted for a limited time period. The plaintiff filed four amended appeals challenging these rulings. Additional facts will be set forth as necessary.

In his original appeal, the plaintiff argues that the court improperly (1) granted the defendant's pendente lite motion for modification, (2) failed to address the plaintiff's pendente lite motion for contempt, (3) ordered him to pay alimony and child support at the same time as it ordered him to pay 60 percent of household and children's expenses, (4) ordered that the intellectual property of the plaintiff be divided as an asset while also ordering that a portion of the income generated by the intellectual property be paid to the defendant and (5) ordered him to pay $15,000 of the defendant's attorney's fees incurred during pretrial and trial proceedings. In his amended appeals, the plaintiff

---

[4] The court issued various other orders in its dissolution judgment, which the plaintiff has not challenged on appeal.

challenges various postjudgment orders of the court; specifically, he argues that the court improperly (6) ordered him to pay appellate attorney's fees, (7) granted the defendant's postjudgment motion for sole use and possession of the marital home, (8) denied his December 30, 2009 postjudgment motion for modification, (9) denied his May 25, 2010 postjudgment motion for modification and (10) denied his motion for a continuance and granted the defendant's postjudgment motion for modification.

We begin by setting forth the applicable standard of review. "An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . .

"A fundamental principle in dissolution actions is that a trial court may exercise broad discretion in awarding alimony and dividing property as long as it considers all relevant statutory criteria." (Internal quotation marks omitted.) *Cleary* v. *Cleary*, 103 Conn. App. 798, 800–801, 930 A.2d 811 (2007). Further, we note that "[t]he issues involving financial orders are entirely interwoven. The rendering of a judgment in a complicated dissolution

case is a carefully crafted mosaic, each element of which may be dependent on the other. . . . Furthermore, trial courts are endowed with broad discretion to distribute property in connection with a dissolution of marriage." (Citation omitted; internal quotation marks omitted.) *Greco* v. *Greco*, 275 Conn. 348, 354, 880 A.2d 872 (2005). With these principles in mind, we first address the plaintiff's claims in his original appeal and then turn to the claims raised in his amended appeals.

I

A

As noted previously, the plaintiff claims error in the court's resolution of two motions filed pendente lite but considered by the court at the time of trial. First, the plaintiff claims that the court improperly granted the defendant's motion for modification of the parties' December 11, 2008 stipulation. We disagree.

"The court's authority to modify alimony orders is found in General Statutes § 46b-86 (a), which provides in relevant part that [u]nless and to the extent that the decree precludes modification . . . an order for alimony or support pendente lite may . . . be . . . modified . . . upon a showing of a substantial change in the circumstances of either party . . . . Additionally, this court has held that [t]he [trial] court has the authority to issue a modification only if it conforms the order to the distinct and definite changes in the circumstances of the parties. . . . The inquiry, then, is limited to a comparison between the current conditions and the last court order." (Internal quotation marks omitted.) *Angle* v. *Angle*, 100 Conn. App. 763, 772, 920 A.2d 1018 (2007).

The December 11, 2008 stipulation provided that the parties pay equally the obligations set forth therein. See footnote 3 of this opinion. The defendant's February 4, 2009 motion for modification alleged a substantial

change in circumstances because, since the date of the stipulation, the plaintiff had received "income related to a book he recently authored and published."[5] The court concluded that a substantial change in circumstances existed on the basis of the plaintiff's increase in income as well as the defendant's decrease in income. Accordingly, the court ordered that the plaintiff pay 60 percent of the obligations enumerated in the stipulation.

The plaintiff argues that the court's finding that there was "some decrease in [the] defendant's earnings" was clearly erroneous. On December 11, 2008, the day before the effective date of the stipulation, the defendant filed a financial affidavit reporting a gross weekly income of $1198 and a net weekly income of $933. At trial, the defendant testified that her gross weekly income had decreased to $1077. The plaintiff argues that the defendant "failed to disclose substantial commissions earned" in the course of her employment. "As is often stated, we do not reverse the factual findings of the trial court unless they are clearly erroneous and find *no* support in the evidence." (Emphasis added.) *Crews* v. *Crews*, 107 Conn. App. 279, 312, 945 A.2d 502 (2008), aff'd, 295 Conn. 153, 989 A.2d 1060 (2010). Because the defendant's financial affidavits provide some evidence of a decrease in her income, we cannot conclude that the court's finding in this regard was clearly erroneous.[6] The court was entitled to credit the

[5] Specifically, the defendant asserted that the plaintiff had disclosed that he received the following sums related to the sales of his book since the date of the stipulation: (a) $9339.50, received on December 29, 2008; (b) $1197.40, received on January 20, 2009; and (c) $40,320.85, received on January 26, 2009.

[6] The plaintiff also argues that the court improperly found that the defendant's income had decreased because the court also found that the defendant "earns in a $70,000 to $80,000 range," which calculates to a gross weekly income in a $1346 to $1538 range. We do not agree that the court's findings are mutually exclusive. At trial, the defendant testified that while working for her previous employer, she earned between $75,000 and $78,000 and that her income had since decreased. We also note the following colloquy which took place at trial:

defendant's testimony regarding her income, and we will not disturb the court's determination on appeal. See *Spilke* v. *Spilke*, 116 Conn. App. 590, 597, 976 A.2d 69, cert. denied, 294 Conn. 918, 984 A.2d 68 (2009). Moreover, the central basis for the court's granting of the defendant's motion for modification was the evidence of the plaintiff's substantial increase in income due to the publication of his book. Specifically, the defendant testified at trial that she received letters from the plaintiff disclosing that he received three checks between December 29, 2008, and January 26, 2009, totaling $50,857.75, and these letters were admitted into evidence. As a reviewing court, we will not "disturb trial court orders unless the trial court has abused its legal discretion or its findings have no reasonable basis in the facts." (Internal quotation marks omitted.) *Borkowski* v. *Borkowski*, 228 Conn. 729, 739, 638 A.2d 1060 (1994). Therefore, on the basis of our review of the record, we cannot conclude that the court abused its discretion in granting the defendant's motion for modification. Accordingly, we affirm the portion of the court's order that was applied retroactively from February 4, 2009, to the time of judgment. The portion of the court's order that applies from the date of judgment until the sale of the marital home, however, was part of the court's mosaic of financial orders. As we explain in part I B of this opinion, because we must remand the case for a new hearing on all financial orders, we remand this latter portion of the court's order.

---

"[The Plaintiff's Counsel]: Okay. The financial records, ma'am, 2002, 2003, 2004, 2005, 2006, 2007, and 2008, you and [the plaintiff] were making pretty much the same money. You actually made a couple years [$75,000] or $78,000 and he was making [$50,000] or $60,000?

"[The Defendant]: Because he chose not to go out into the workforce. That was his choice."

Thus, the court could have found that while the defendant normally earns in a $70,000 to $80,000 range, her income had decreased slightly at the time of trial because of her change in employment.

Second, the plaintiff claims that the court improperly failed to address his January 29, 2009 pendente lite motion for contempt.[7] We agree.

The plaintiff's motion for contempt asserted that the defendant had failed to reimburse him for one half of the expenses enumerated in the 2008 stipulation in the amount of $1172.56. At trial, the defendant testified that she believed she owed the plaintiff some money, but that she did not know how much because she had no documentation to show exactly what he had paid toward the expenses at issue in the stipulation. As of the time of trial, the plaintiff claimed that the defendant owed him $9381.02.[8] The court did not address this alleged arrearage in its memorandum of decision, but granted the defendant's pendente lite motion for modification. The plaintiff filed a motion for articulation, requesting that the court articulate whether it found any arrearage due to him by the defendant in accordance with the parties' stipulation. The court denied

[7] The defendant argues that because the court did not rule on the contempt motion, the plaintiff's claim does not qualify as an appeal from a final judgment. This court has held, however, that "[a] trial court's decision not to consider a motion properly before it is the functional equivalent of a denial . . . ." (Internal quotation marks omitted.) *Gong* v. *Huang*, 129 Conn. App. 141, 148, 21 A.3d 474, cert. denied, 302 Conn. 907, 23 A.3d 1247 (2011). In this case, the court's functional denial of the plaintiff's motion for contempt at the time of the dissolution was an appealable final judgment.

[8] We also note the following relevant colloquy regarding e-mail correspondences between the parties, which were admitted into evidence:

"[The Plaintiff's Counsel]: Mrs. Lynch, I'd like you to go to the February 8 e-mail from [the plaintiff] to you.

"[The Defendant]: Yes.

"[The Plaintiff's Counsel]: And there—it says there . . . since [December 11], we have paid a combined $19,202.85 for allowable shared expenses. Of this amount [the plaintiff has] paid $11,860.64 and you have paid $7342.21. Compare with a fifty-fifty required total of $9601.42. . . .

"[The Plaintiff's Counsel]: All right. And at that point when you got back [to him], did you dispute to your husband that you owed him two thousand some-odd dollars?

"[The Defendant]: As of this date, no."

this aspect of the motion. In addition, the plaintiff filed a motion to reargue or for reconsideration of the financial, parenting and all other orders in the court's memorandum of decision dissolving the parties' marriage. The court denied that motion.

As we have noted, the court granted the defendant's motion for modification, retroactively increasing the plaintiff's obligation for the expenses enumerated in the prior stipulation to 60 percent, rather than 50 percent. Because the defendant did not dispute at trial that arrearages were owed, the court should have addressed these arrearages in its memorandum of decision. This court has held that "[r]eview may be made . . . of that part of a final order which fails to . . . incorporate an accumulated arrearage of pendente lite alimony. . . . Indeed, it would be error for a trial court . . . to fail to incorporate an accumulated arrearage of pendente lite alimony in a final order granting dissolution. . . .

"Here . . . although the court did not expressly forgive the arrearage of pendente lite support, it failed to include the arrearage in its judgment dissolving the marriage. . . . [T]hat failure to include an arrearage in a final order of dissolution has the same effect on the party entitled to the pendente lite arrearage as it would have had if the court had expressly modified or forgiven the pendente lite order at the time of dissolution; it strips that party of a vested property right and constitutes an impermissible retroactive modification of the pendente lite orders in violation of § 46b-86. Even if it is assumed that the [party] was not stripped of a vested property right because [the party] could again return to court and seek a judgment in the amount of the arrearage in an independent separate action, judicial economy concerns should prevail. It was improper for the court to omit the pendente lite arrearage in its final judgment of dissolution even though the [party] may not have specifically requested that in [his] claims for

relief." (Citations omitted; internal quotation marks omitted.) *Clark* v. *Clark*, 127 Conn. App. 148, 157–59, 13 A.3d 682, cert. denied, 301 Conn. 914, 19 A.3d 1260 (2011). Thus, we conclude that the matter must be remanded for a determination of the amount of the pendente lite arrearage to be included in the judgment, along with an appropriate order for its payment.

## B

The plaintiff also challenges a number of the other orders entered as part of the court's judgment. The plaintiff argues that the court improperly ordered that his intellectual property be divided as an asset while also ordering that a portion of the income generated by the intellectual property be paid to the defendant.[9] We agree.

It is well established that when a spouse holds an interest in intellectual property, the proceeds flowing therefrom constitute marital property subject to division, so long as such proceeds or royalties are neither "indefinite nor speculative." *Gallo* v. *Gallo*, 184 Conn.

---

[9] At oral argument before this court, the plaintiff for the first time argued that the standard of review for this claim was plenary. First, "[a]ppellate courts generally do not consider claims raised for the first time at oral argument." (Internal quotation marks omitted.) *Max's Place, LLC* v. *DJS Realty, LLC*, 123 Conn. App. 408, 414, 1 A.3d 1199 (2010). Second, we disagree with the plaintiff that a plenary standard of review applies to this claim. "[T]he abuse of discretion standard applies . . . to decisions based solely on factual determinations made by the trial court. See, e.g., *Simms* v. *Simms*, 283 Conn. 494, 502, 927 A.2d 894 (2007) (alimony orders subjected to abuse of discretion review); *Sablosky* v. *Sablosky*, 258 Conn. 713, 721, 784 A.2d 890 (2001) (contempt orders subjected to abuse of discretion review); *Madigan* v. *Madigan*, 224 Conn. 749, 758, 620 A.2d 1276 (1993) (custody orders subjected to abuse of discretion review)." *Crews* v. *Crews*, 295 Conn. 153, 164–65, 989 A.2d 1060 (2010). Here, the decision of the court to award royalties plus a portion of the value of the unsold books constituted a factual determination. The court did not conduct a legal analysis or consider a mixed question of law or fact in making this determination. See id. Therefore, we apply the abuse of discretion standard of review set forth previously in reviewing this claim.

36, 48, 440 A.2d 782 (1981). A contractually established right to receive royalties from the sale of books, "unlike a potential inheritance which is speculative," is "more akin to an order to sell the marital home and divide the proceeds." Id. Here, it is undisputed that the plaintiff, at the time of the court's order, had a contractual right to royalties from the sale of his book. Thus, these royalties constitute marital property subject to division by the court.

The court's order that the plaintiff *also* pay to the defendant 30 percent of the value of the unsold books, however, was error. Our Supreme Court has held that the consideration of a marital asset in both the property distribution and alimony award does not constitute "double dipping" unless "any portion of the [asset] assigned to the nonemployee spouse was counted in determining the employee spouse's resources for purposes of alimony." (Internal quotation marks omitted.) *Krafick* v. *Krafick*, 234 Conn. 783, 805 n.26, 663 A.2d 365 (1995). Here, the court divided the plaintiff's intellectual property by ordering him to pay the defendant a percentage of the value of the unsold books and then ordered him to pay income in the form of royalties from the sale of *all* of the books, even those whose value was allocated to the defendant.

Where an asset does not itself produce significant income, our Supreme Court has concluded that the asset may be considered for purposes of property division and alimony or support awards. See *Greco* v. *Greco*, supra, 275 Conn. 357 n.8. In *Greco*, the trial court ordered that the defendant relinquish to the plaintiff his stock in a closely held corporation. Id., 357. The defendant's principal source of income was his salary from that corporation. Id. Our Supreme Court concluded that the trial court's "taking the corporation into account in both the property division and in the award

of alimony and other payments" did not constitute double dipping. (Internal quotation marks omitted.) Id., 357 n.8. The court reasoned that "the stock itself did not constitute a significant resource or source of income and the trial court did not attribute any such income (e.g. cash dividends) to the defendant in determining his income for the purpose of calculating alimony." Id. In the present case, by contrast, the plaintiff's inventory of books did constitute a significant source of income because the books directly produced a significant stream of income, namely, royalties.[10] Thus, the present case is distinguishable from *Greco*. We conclude that the court improperly awarded to the defendant 30 percent of the value of the plaintiff's unsold books. We conclude that the court's granting of 30 percent of the royalties derived from the sale of the books was proper.[11]

Because we conclude that the court's marital property distribution orders were improper in part, it is

---

[10] The defendant argues that the plaintiff's financial affidavits were not credible. Specifically, the defendant stated that when the plaintiff's book sales exceeded expenses, he removed them from his income calculations and treated them as assets. To the extent that the defendant suggests that this was the reason the court awarded the defendant a portion of the unsold books in addition to royalties, we note that the court never made a finding in this regard. Although the court did later articulate that certain aspects of the plaintiff's testimony regarding his income were not credible, we cannot infer that the issue of the plaintiff's credibility was the reason that the court decided this issue the way that it did.

[11] We have not found any cases from other jurisdictions where a court ordered that a spouse pay a portion of an income stream derived from intellectual property and also ordered that the spouse pay a percentage of the value of that property. See, e.g., *Rodrigue* v. *Rodrigue*, 218 F.3d 432, 435–39 (5th Cir. 2000) (concluding that owner spouse alone possessed right to possess, use, transfer, alienate and encumber copyright, but that both spouses possessed right to receive and enjoy economic benefits produced by or derived therefrom), cert. denied, 532 U.S. 905, 121 S. Ct. 1227, 149 L. Ed. 2d 137 (2001); *In re Marriage of Heinze*, 257 Ill. App. 3d 782, 785–86, 631 N.E.2d 728 (1994) (postdivorce royalties from book written during marriage constituted distributable marital property); *Dunn* v. *Dunn*, 802 P.2d 1314, 1319 (Utah App. 1990) (future royalty income from husband's invention of surgical instruments was community property).

necessary to remand the case for reconsideration of all the financial matters. "The orders are interwoven and constitute a carefully crafted mosaic [and] [w]hen we disrupt a single tile in this mosaic, we place in doubt the propriety of other financial orders that the trial court may have deemed equitable in relation to the entire distribution scheme." (Citation omitted; internal quotation marks omitted.) *Tyc* v. *Tyc*, 40 Conn. App. 562, 569, 672 A.2d 526, cert. denied, 237 Conn. 916, 676 A.2d 398 (1996). The court's order awarding 30 percent of the value of the unsold books to the defendant is not severable from the rest of the court's financial orders because the order affects the other aspects of its judgment. See *Oldani* v. *Oldani*, 132 Conn. App. 609, 624–25, 34 A.3d 407 (2011); *Brooks* v. *Brooks*, 121 Conn. App. 659, 672, 997 A.2d 504 (2010) ("[b]ecause it is uncertain whether the court's financial awards will remain intact after reconsidering the issue of its lump sum alimony award consistent with this opinion today, the entirety of the mosaic must be refashioned"); compare *Misthopoulos* v. *Misthopoulos*, 297 Conn. 358, 389–90, 999 A.2d 721 (2010) (concluding that improper order requiring defendant to pay 20 percent of annual net cash bonus, 20 percent of any undetermined future tax refund, and 20 percent of 2005 net cash bonus as child support was severable from alimony, property distribution and other unrelated financial orders); *Smith* v. *Smith*, 249 Conn. 265, 278–79, 752 A.2d 1023 (1999) (affirming limited remand regarding future interest in trust, where value of trust was unknown and not taken into account in other financial orders). Accordingly, we must remand the matter to the trial court with direction to hold a new hearing as to all financial orders.[12]

---

[12] We need not review the plaintiff's claims challenging the other financial orders rendered in the dissolution judgment "based on our partial reversal of that judgment and our remand to the trial court for new financial orders." *Oldani* v. *Oldani*, supra, 132 Conn. App. 625 n.11. As to the plaintiff's arguments that the court improperly (1) granted the defendant's motion for appellate attorney's fees, (2) denied two of his postjudgment motions for

## II

Finally, the plaintiff claims that the court, on December 10, 2009, improperly granted the defendant's postjudgment motion, dated November 24, 2009, for sole use and possession of the marital home. Specifically, the plaintiff claims that the court lacked jurisdiction to grant this motion postjudgment.[13] We disagree.[14] "[B]ecause [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary. . . . [A] lack of subject matter jurisdiction can be raised at any time and cannot be waived by either party." (Internal quotation marks omitted.)

modification and (3) granted the defendant's postjudgment motion for modification, these arguments have been rendered moot by our remand order, and there is no need for us to further address these arguments. See id.

[13] The plaintiff filed a motion for review of the court's denial of his motion for articulation regarding this issue, which this court granted. The court subsequently articulated that it did not order the parties to share the marital residence postjudgment, as the plaintiff's motion for articulation had alleged. Rather, the court explained that its judgment "does recite that at the time of trial that both parties wanted to remain in the home and that the court would not upset that arrangement and further ordered that there should be an immediate sale of the marital home."

The plaintiff argues that the court's articulation fails to address either the factual or legal basis for the original order granting the defendant's motion. It is axiomatic that the appellant has the responsibility of providing this court with an adequate record for review. See Practice Book § 61-10. We conclude, however, that the court set forth sufficient findings and conclusions, and we will review the claim on the basis of the record before us. See *Phillips* v. *Phillips*, 101 Conn. App. 65, 72 n.1, 922 A.2d 1100 (2007) (reviewing claim although "recognizing the limited usefulness of the court's articulation").

[14] The court's articulation stated that this claim is "moot since the [plaintiff] has since vacated the marital home." We note, however, that the plaintiff vacated the marital home in accordance with the court's order. If the plaintiff had not done so, he would have faced a possible contempt finding. Moreover, although we conclude that the court properly granted the defendant's motion, if we had agreed with the plaintiff and remanded the matter, the court could have granted practical relief. The court could have, for example, modified the parties' living arrangements regarding who would live in the marital home before its sale. Therefore, we do not conclude that this claim is moot.

*Fewtrell* v. *Fewtrell,* 87 Conn. App. 526, 529–30, 865 A.2d 1240 (2005).

"Absent waiver, consent, submission to jurisdiction or statutory exception, the court is without subject matter jurisdiction to modify or correct a final judgment after the four month period for opening or setting aside a civil judgment has passed pursuant to General Statutes § 52-212a. . . . The court, however, retains continuing jurisdiction to modify final orders for the periodic payment of alimony or support, and the care, custody and visitation of minor children, subject to proof of certain conditions as provided in General Statutes §§ 46b-86 and 46b-56. The court does not retain continuing jurisdiction over that portion of a dissolution judgment providing for the assignment of property of one party to the other under General Statutes § 46b-81." (Citations omitted; internal quotation marks omitted.) *Fiddelman* v. *Redmon,* 37 Conn. App. 397, 401, 656 A.2d 234 (1995).

The court did not lack jurisdiction to grant the defendant's motion. In its memorandum of decision rendering judgment, the court stated: "It should be noted that the parties do not communicate with one another but both want to remain in the house until it is actually sold. The court will not upset that arrangement. The court sees no alternative to an immediate sale of the marital home." The court did not make this statement in the section of its memorandum of decision setting forth its property distribution orders, but rather in its introduction of factual findings. See *Passamano* v. *Passamano,* 228 Conn. 85, 91, 634 A.2d 891 (1993) ("[w]hen the decree is silent as to the characterization of an order, an analysis of the structure of the dissolution decree is highly instructive"). The court's aim in allowing the parties to live together until the sale of the marital home was to uphold their own agreement, not to distribute property. The court did not award ownership of the

marital home to the defendant in granting the motion; to the contrary, it ordered that the property be sold immediately.[15]

The defendant's motion alleged that it was in the "best interest of the [d]efendant and the minor children of the parties" that the plaintiff vacate the premises. At the hearing, the parties admitted that the living situation had had a negative impact on themselves and the children.[16] In granting the defendant's motion, the court did not order an impermissible postjudgment property distribution. Rather, the court was modifying the living arrangement of the parties in accordance with the best interests of the children and the parties. See *Fiddelman* v. *Redmon*, supra, 37 Conn. App. 403–404 (postjudgment motion for exclusive possession properly granted where parties participated in "birdnesting arrangement," which court characterized not as property assignment but as part of custody award); see also *Adamo* v. *Adamo*, 123 Conn. App. 38, 40, 1 A.3d 221

[15] The plaintiff argues that General Statutes § 46b-83 only grants the authority to award exclusive use and possession of the marital home pendente lite, rather than postjudgment. Section 46b-83 (a) provides in relevant part: "The court may also award exclusive use of the family home or any other dwelling unit which is available for use as a residence pendente lite to either of the parties as is just and equitable without regard to the respective interests of the parties in the property." We note, however, that § 46b-83 (a) does not preclude the court from making a temporary order regarding the living arrangements of the parties until the marital home is sold.

[16] The defendant testified that "when the court ordered that we would live together until the house was sold, that was on the assumption that the house was going to [be] put on the market right away. [The plaintiff] is appealing the divorce, and I think it's indefinite when this is ever going to end. Since then, there [have] been a few occasions where [the plaintiff's] inability to control his anger and rage has escalated the tension in our house to really an unbearable level both for me and for the kids."

In addition, at the December 10, 2009 hearing, the following colloquy occurred between the plaintiff and the defendant's counsel:

"[The Defendant's Counsel]: Sir, do you believe that it is in the best interest of the children that they not have to see the tension and live in the tension that exists in your home while the appeal is pending?

"[The Plaintiff]: The way the question is asked, I have to say yes."

(trial court granted exclusive possession to plaintiff until she received lump sum payment from defendant), cert. denied, 298 Conn. 916, 4 A.3d 830 (2010). Therefore, because the court's order directing the plaintiff to vacate the marital home was not an assignment of property, we do not conclude that it lacked jurisdiction to make such an order.

The judgment is reversed as to the financial orders only, except with respect to the portion of the court's order granting the defendant's February 4, 2009 pendente lite motion for modification that applies retroactively from February 4, 2009, until the date of judgment, which is affirmed, and the case is remanded for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.