CHRISTINE M. SZYNKOWICZ *v.* VINCENT
P. SZYNKOWICZ
(AC 33606)

Gruendel, Lavine and Mihalakos, Js.

526

Argued September 20, 2012—officially released February 5, 2013

*Pamela M. Magnano*, for the appellant (defendant).

*Sarah A. Ouellette*, for the appellee (plaintiff).

*Opinion*

LAVINE, J. The defendant, Vincent P. Szynkowicz, appeals from the judgment of the trial court dissolving his marriage to the plaintiff, Christine M. Szynkowicz. The defendant claims that the court abused its discretion (1) in fashioning orders of support because the court (a) calculated alimony based on gross income, (b) ordered him to obtain life insurance without a factual basis to do so and (c) ordered him to provide impracticable financial support, (2) by awarding all of the parties' real property to the plaintiff, (3) by ordering the defendant to pay the plaintiff $8000 in attorney's fees and (4) by failing to find the plaintiff in contempt of automatic court orders. We disagree and affirm the judgment of the trial court.

The following findings of fact by the court and procedural history are relevant to this appeal. The parties were married in 1993. In late 2009, the defendant told the plaintiff that he had met Linda Kleinschmidt. At

some point, the defendant became romantically involved with her. In January, 2010, the defendant told the plaintiff that he wanted a divorce. The parties separated in March, 2010. The court found that the defendant was primarily at fault for the irretrievable breakdown of the marriage.

At the time of the dissolution proceedings, the plaintiff faced serious health issues. She suffers from multiple sclerosis. She must rely upon any available object to support her when she walks or else she faces a serious risk of falling. Due to the disease, she can only go up or down stairs by moving sideways. Furthermore, the plaintiff was injured seriously in an automobile accident in 1987. She still suffers neck pain from her injuries sustained in that accident. In addition, at the time of the proceedings, she was facing surgery for another serious health issue.

At the time of the dissolution proceedings, the plaintiff had lived in the marital home for more than two decades. Most of the plaintiff's settlement from the 1987 accident, approximately $39,400.32, was used to purchase the marital home. She was fully familiar with the layout of the house. Despite her condition, she could maneuver within the home. Friends and neighbors assist her. It would have been a particular hardship for the plaintiff to leave the marital home.

At the time of the dissolution proceedings, the plaintiff had a high school education and had been able to join the workforce for only five of the previous twenty-eight years. The plaintiff's educational background and skills, her long hiatus from the workforce and her serious medical issues made it unlikely that she would be able to obtain gainful employment in the future. The plaintiff received social security disability payments totaling $764 per month.

At the time of the dissolution proceedings, the defendant had an associates degree, was in generally good health, worked for an elevator company and earned overtime pay. The defendant's salary varied somewhat from year to year due to the variable availability of overtime pay, but as of December 30, 2010, his earnings statement showed $98,202.61 in gross pay for the year. The defendant had given Kleinschmidt approximately $6000 and paid for a vacation with her. They had exchanged gifts, and he purchased gifts for her children from a prior relationship.

The court concluded that the defendant contributed most substantially to the family finances, aside from the purchase of the marital home, whereas the plaintiff contributed most substantially to the family unit and carried primary responsibility for the maintenance and preservation of the family finances.

On April 19, 2011, the court issued its memorandum of decision dissolving the parties' marriage. Among other things, the court ordered the defendant to pay the plaintiff $36,000 per year in alimony, to transfer all interest in the marital home to the plaintiff, to maintain $200,000 in life insurance naming the plaintiff as irrevocable beneficiary, to pay one half of the plaintiff's medical insurance premiums, to pay $8000 of the plaintiff's counsel fees and to pay $6471.63 in joint credit card debt.[1] This appeal followed.[2]

We reiterate our standard of review. "An appellate court will not disturb a trial court's orders in domestic

[1] On May 3, 2011, the plaintiff filed a postjudgment motion to correct, which the court granted on May 5, 2011. The court's initial decision ordered the defendant to make periodic alimony payments of $2800 per month, which would not total $36,000 in alimony per year. The correction was to order periodic alimony payments of $3000 per month.

[2] On January 25, 2012, the defendant filed a motion for articulation pursuant to Practice Book § 66-5, which the trial court denied on February 8, 2012. The defendant did not seek review of that motion pursuant to Practice Book § 66-7.

relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . It is within the province of the trial court to find facts and draw proper inferences from the evidence presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . [T]o conclude that the trial court abused its discretion, we must find that the court either incorrectly applied the law or could not reasonably conclude as it did. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Milazzo-Panico* v. *Panico*, 103 Conn. App. 464, 467–68, 929 A.2d 351 (2007).

I

A

The defendant claims that the court improperly calculated alimony based on gross income rather than net income. Specifically, the defendant claims that because the court referred only to gross income and made no express findings as to net income in its memorandum of decision, the court must necessarily have based its order solely on gross income. We disagree.

"[A] court must base its child support and alimony orders on the available net income of the parties, not gross income. . . . Whether . . . an order falls within this prescription must be analyzed on a case-by-case basis. Thus, while our decisional law in this regard consistently affirms the basic tenet that support and

alimony orders must be based on net income, the proper application of this principle is context specific." (Internal quotation marks omitted.) *Auerbach* v. *Auerbach*, 113 Conn. App. 318, 338, 966 A.2d 292, cert. denied, 292 Conn. 901, 971 A.2d 40 (2009). "*[T]he trial court is not required to make specific reference to the criteria that it considered in making its decision.*" (Emphasis added.) *Hughes* v. *Hughes*, 95 Conn. App. 200, 207–208, 895 A.2d 274, cert. denied, 280 Conn. 902, 907 A.2d 90 (2006). "[T]he mere notation by the court of a party's gross earnings is not fatal to its support and alimony orders so long as its orders are not *based* on the parties' gross earnings." (Emphasis added.) Id., 206.

In the present case, the defendant concedes that the court had before it evidence of his net income. In its memorandum of decision, the court stated that it "ha[d] considered all of the evidence presented with respect to the . . . amount and sources of income . . . ." Facially, the court's consideration included the conceded evidence of net income. Furthermore, when examined in context, it is clear that the court made the passing reference to gross income merely in reference to the variable of overtime pay.[3]

Finally, the court was not required to make explicit findings as to net income. See *Hughes* v. *Hughes*, supra, 95 Conn. App. 207–208. To whatever extent the precise basis of the court's decision may be unclear, the defendant bore the responsibility to provide this court with an adequate record for review, and he chose not to

---

[3] In its memorandum of decision, the court stated in relevant part: "The defendant . . . worked for Otis Elevator for twenty-four years, he then worked for another company for four years, and he now works for Eagle . . . Elevator Company, Inc. His current salary varies somewhat due to the availability of overtime pay, but his year to date earnings statement from [his employer] shows $98,202.61 in gross pay as of December 30, 2010. The defendant is fifty-four years of age and is in generally good health, suffering to some extent from high blood pressure."

seek review of the court's denial of his motion for articulation. "Because it is the . . . appellant's responsibility to provide this court with an adequate record for review . . . we will not remand a case to correct a deficiency the . . . appellant should have remedied." (Internal quotation marks omitted.) *Phillips* v. *Phillips*, 101 Conn. App. 65, 72 n.1, 922 A.2d 1100 (2007). Rather, "we allow every reasonable presumption . . . in favor of the correctness of [the trial court's] action." (Internal quotation marks omitted.) *Kelman* v. *Kelman*, 86 Conn. App. 120, 122, 860 A.2d 292 (2004), cert. denied, 273 Conn. 911, 870 A.2d 1079 (2005). We conclude that the court did not improperly fashion the alimony order based on the defendant's gross income.

B

The defendant claims that the court improperly ordered him to obtain a life insurance policy in the amount of $200,000 because there was no evidence of his ability to obtain such life insurance, the cost of life insurance or his ability to pay for the policy. We do not agree.

"An order for life insurance is very often an appropriate and necessary component of a judgment of dissolution of marriage. . . . General Statutes §§ 46b-82 (a) and 46b-84 (f) were amended in 2003 to provide: The court may order that a party obtain life insurance as such security unless such party proves, by a preponderance of the evidence, that such insurance is not available to such party, such party is unable to pay the cost of such insurance or such party is uninsurable. . . . *These amendments place the burden regarding the availability and cost of the life insurance on the party upon whom the life insurance obligation is to be imposed.*" (Citation omitted; emphasis added; internal quotation marks omitted.) *Boyne* v. *Boyne*, 112 Conn. App. 279, 285–86, 962 A.2d 818 (2009).

In the present case, the plaintiff requested that the defendant maintain life insurance in the amount of $250,000, and the court ordered the defendant to obtain a policy of $200,000. At trial the defendant argued that there was "some evidence" tending to show that he was not insurable. Nevertheless, we conclude that the court reasonably could have found that the defendant failed to meet his burden of proof as required by statute, and accordingly, we cannot conclude that the court abused its discretion in fashioning the life insurance order. See *Boyne* v. *Boyne*, supra, 112 Conn. App. 286.[4]

## C

The defendant claims that the totality of the financial orders requires reversal. Specifically, the defendant argues that the orders are punitive and impracticable. We do not agree.

Courts carefully must consider the parties' standard of living when dividing marital property. *Greco* v. *Greco*, 275 Conn. 348, 356, 880 A.2d 872 (2005). "The purpose of dividing marital property is to preserve, as much as possible, the parties' existing standard of living, not to award property to one spouse to the complete exclusion of the other." Id. "[T]he issues involving financial orders are . . . interwoven. The rendering of a judgment in

---

[4] The defendant maintains that such orders for life insurance must have a basis in fact, relying on cases that recite the legal standard prior to the 2003 amendments: "[A]n order [for life insurance] must have a reasonable basis in the evidence" or the order would be invalid. (Internal quotation marks omitted.) *Bee* v. *Bee*, 79 Conn. App. 783, 793, 831 A.2d 833, cert. denied, 266 Conn. 932, 837 A.2d 805 (2003); see also *Crews* v. *Crews*, 107 Conn. App. 279, 306, 945 A.2d 502 (2008), aff'd, 295 Conn. 153, 989 A.2d 1060 (2010); *Quindazzi* v. *Quindazzi*, 56 Conn. App. 336, 338, 742 A.2d 838 (2000). In each case that the defendant relies upon, either the trial court rendered judgment before the 2003 amendments went into effect or application of the burden shifting provisions was not presented as an issue on appeal. Accordingly, those cases are inapposite. See *Boyne* v. *Boyne*, supra, 112 Conn. App. 286 n.8, distinguishing *Watrous* v. *Watrous*, 108 Conn. App. 813, 820 n.5, 949 A.2d 557 (2008).

a complicated dissolution case is a carefully crafted mosaic, each element of which may be dependent on the other. . . . Furthermore, trial courts are endowed with broad discretion to distribute property in connection with a dissolution of marriage." (Citation omitted; internal quotation marks omitted.) Id., 354. Finally, "alimony is not designed to punish, but to ensure that the former spouse receives adequate support." Id., 361.

"With respect to the financial awards in a dissolution action, great weight is given to the judgment of the trial court because of its opportunity to observe the parties and the evidence. . . . Moreover, the power to act equitably is the keystone to the court's ability to fashion relief in the infinite variety of circumstances which arise out of the dissolution of a marriage." (Internal quotation marks omitted.) *Fitzsimons* v. *Fitzsimons*, 116 Conn. App. 449, 458–59, 975 A.2d 729 (2009).

At the outset, we take notice of the court's postjudgment order issued December 23, 2011, on the plaintiff's motions to terminate the appellate stay and for postjudgment attorney's fees. See *Szynkowicz* v. *Szynkowicz*, Superior Court, judicial district of Litchfield, Docket No. FA-10-4009365-S (December 23, 2011). "The Appellate Court, like the trial court, may take judicial notice of files of the Superior Court in the same or other cases." (Internal quotation marks omitted.) *Wasson* v. *Wasson*, 91 Conn. App. 149, 151 n.1, 881 A.2d 356, cert. denied, 276 Conn. 932, 890 A.2d 574 (2005). In its memorandum of decision on the motions, the court explained that it found the defendant's financial affidavit to be unreliable: "The court finds that the defendant's financial affidavit was prepared in a manner that artificially inflates his liabilities. The court is firmly convinced that the defendant is capable of making the payment sought by the plaintiff. The court is equally convinced, having

reviewed the plaintiff's financial affidavit and knowing her personal situation, that the plaintiff has virtually no assets available to her." Although these factual findings are not directly part of the judgment that is the subject of this appeal, they illuminate it.

After thoroughly reviewing the record, we conclude that the financial orders were not punitive. Given the especially difficult situation that the plaintiff faces due to her physical disability and other health issues, the financial orders fall within the range of the court's discretion.

Nor do we conclude that the orders are impracticable. The defendant claims that he cannot meet basic living expenses under these orders, pointing to his financial affidavit. As discussed, in its December 23, 2011 memorandum of decision, the court noted the affidavit's unreliability. More importantly, the court made no express findings as to the defendant's net income or expenses, and "this court cannot find facts . . . ." (Internal quotation marks omitted.) *Zhuta* v. *Tartaglia*, 135 Conn. App. 113, 117, 43 A.3d 183 (2012). The present case required the court to exercise its discretion to tailor equitable orders to fit a difficult situation. In the absence of requisite factual findings,[5] we cannot say that these orders "forced [the defendant] to the brink of abject poverty"; *Greco* v. *Greco*, supra, 275 Conn. 363; and were so impracticable as to constitute an abuse of discretion.

The defendant relies on *Greco* v. *Greco*, supra, 275 Conn. 348, in which our Supreme Court concluded that

---

[5] In numerous places throughout his appellate brief, the defendant points to the fact that the court denied his motion for articulation. Because the defendant did not seek and obtain review of that denial; see footnote 2 of this opinion; the denial does not affect our reasoning. "[W]here a party is dissatisfied with the trial court's response to a motion for articulation, he may, and indeed under appropriate circumstances he must, seek immediate appeal of the rectification memorandum to this court via the motion for review." (Internal quotation marks omitted.) *Phillips* v. *Phillips*, supra, 101 Conn. App. 71 n.1.

the court "abused its discretion by failing to consider adequately the parties' current financial circumstances in forming its judgment." Id., 350. Like the court in this case, the trial court in *Greco* did not make any factual findings concerning the net income of the defendant, George Greco. See *Greco* v. *Greco*, 82 Conn. App. 768, 774 n.9, 847 A.2d 1017 (2004), aff'd, 275 Conn. 348, 880 A.2d 872 (2005). In determining that the orders in *Greco* constituted an abuse of discretion, both this court and our Supreme Court discussed George Greco's financial affidavit, as opposed to express factual findings. *Greco* v. *Greco*, supra, 361; *Greco* v. *Greco*, supra, 774 n.9.

*Greco* is distinguishable from the present case. First, because the orders in *Greco* left George Greco with a "*gross income* deficit," the trial court could not reasonably have concluded that it was possible for him to comply. (Emphasis in original.) *Greco* v. *Greco*, supra, 82 Conn. App. 774 and n.9. A court in domestic relations cases sits in equity; *Parlato* v. *Parlato*, 134 Conn. App. 848, 851, 41 A.3d 327 (2012); and equity will not grant a decree that is ineffectual because compliance is impossible. See 27A Am. Jur. 2d 629, Equity § 91 (2008) ("equity will not do or require the doing of a useless, vain, or futile thing"); cf. *Kelley* v. *Tomas*, 66 Conn. App. 146, 157, 783 A.2d 1226 (2001) (equity "does not require the doing of a useless act"). By contrast, the defendant contends that the orders would leave him with $18,558.80 of income per year before paying $8000 in attorney's fees and credit card debt. Additionally, for the purpose of analysis under the statutory factors enumerated in §§ 46b-82 (a) and 46b-84 (f), the situation of the parties in the present case is substantially different. George Greco had an eighth grade education, suffered significant health problems and could only work a few hours each day. *Greco* v. *Greco*, supra, 275 Conn. 356. In the present case, the defendant had an associates

degree, was in generally good health and earned over-time pay. By contrast, the plaintiff had a high school education, suffered serious health issues and had been able to join the workforce for only five of the previous twenty-eight years. Because of these factual distinctions, the reasoning in *Greco* cannot apply to the facts of the present case.

After carefully reviewing the record and the evidence before the court, we cannot say that the orders are impracticable or punitive. Because the court reasonably could have reached its result, we conclude that the orders fall within the trial court's broad discretion.

## II

The defendant's second claim is that the court abused its discretion by awarding all of the parties' real property to the plaintiff. Specifically, the defendant claims that it was an abuse of discretion for the court to award the marital home entirely to the plaintiff, rather than order the property sold and the proceeds divided, because there is no evidence in the record to support the award. We do not agree.

"[T]o conclude that the trial court abused its discretion, we must find that the court either incorrectly applied the law or could not reasonably conclude as it did. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Milazzo-Panico* v. *Panico*, supra, 103 Conn. App. 467–68.

The court specifically found that "[i]t would be a particular hardship for [the plaintiff] to leave the marital

home." The court made additional specific findings of fact as to the plaintiff's limited income and the tremendous obstacles she faces. The court took note of the plaintiff's contribution to the acquisition of the marital home using the settlement money compensating her for injuries she sustained in 1987. The plaintiff's testimony and exhibits support these findings of fact, and therefore they are not clearly erroneous. See *Lynch* v. *Lynch*, 135 Conn. App. 40, 47, 43 A.3d 667 (2012).

In light of these facts, the court reasonably could have concluded that this equitable "divi[sion] [of the] marital property [was necessary] to preserve, as much as possible, the parties' existing standard of living . . . ." *Greco* v. *Greco*, supra, 275 Conn. 356. Accordingly, we conclude that the court did not abuse its discretion in awarding all of the parties' real property to the plaintiff.

### III

The defendant's third claim is that the court abused its discretion by ordering him to pay the plaintiff $8000 in attorney's fees. Specifically, the defendant claims that the award is punitive, that there is no evidence of "egregious litigation" to support the award, that the court failed to make express findings to support the award, and that the evidence does not support the award, which actually totals $13,000 as $5000 of the credit card debt is for attorney's fees. We disagree.

We review the relevant legal standards. "General Statutes § 46b-62 . . . provides in relevant part that the court may order either spouse . . . to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in [§] 46b-82. Section 46b-82, in turn, permits the court to take into consideration such factors as the

length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to [General Statutes § 46b-81]." (Internal quotation marks omitted.) *Berzins* v. *Berzins*, 306 Conn. 651, 657, 51 A.3d 941 (2012). "In making an award of attorney's fees under § 46b-82, [t]he court is not obligated to make express findings on each of these statutory criteria." (Internal quotation marks omitted.) *Misthopoulos* v. *Misthopoulos*, 297 Conn. 358, 385, 999 A.2d 721 (2010).

"[Our Supreme Court] interpreted these statutory provisions . . . to mean that an award of attorney's fees in a marital dissolution case is warranted only when at least one of two circumstances is present: (1) one party does not have ample liquid assets to pay for attorney's fees; or (2) the failure to award attorney's fees will undermine the court's other financial orders." (Citation omitted; internal quotation marks omitted.) *Berzins* v. *Berzins*, supra, 306 Conn. 657. "Whether to allow counsel fees [under § 46b-82], and if so in what amount, calls for the exercise of judicial discretion. . . . An abuse of discretion in granting counsel fees will be found only if [an appellate court] determines that the trial court could not reasonably have concluded as it did." (Citation omitted; internal quotation marks omitted.) *Misthopoulos* v. *Misthopoulos*, supra, 297 Conn. 386.

The defendant claims that the court should have made additional findings to justify the award. A court, however, is not obligated to make express findings on the statutory criteria; id., 385; nor does a court have to state expressly the reason for the award. Rather, the appropriate inquiry is whether "the record would support a finding by the trial court either that the plaintiff lacked sufficient liquid assets with which to pay her

own attorney's fees, or that the failure to award attorney's fees would have undermined its other financial orders." *Bornemann* v. *Bornemann*, 245 Conn. 508, 544, 752 A.2d 978 (1998). Similarly, the defendant cites no law to support his position that "egregious conduct" in litigation is required before a court may award attorney's fees or that a total award of $13,000 in attorney's fees constitutes an abuse of discretion. See *Misthopoulos* v. *Misthopoulos*, supra, 297 Conn. 386 (affirming order of $64,000 in attorney's fees). Likewise, aside from this reasonable sum, the defendant identifies no evidence in the record that the court fashioned the orders to punish the defendant.

In the present case, the court found that the defendant contributed most substantially to the family finances, aside from the purchase of the marital home, and that the plaintiff received only disability payments totaling $764 per month. The court also found that the defendant had the ability to give $6000 to Kleinschmidt, to pay for gifts to her, and to pay for a vacation with her. The defendant does not contend that these findings were clearly erroneous. In light of these facts, as well as the affidavit prepared by the plaintiff's attorney as to the fees the plaintiff incurred, the court reasonably could have concluded either that the plaintiff lacked sufficient liquid assets with which to pay her own attorney's fees, or that the failure to award attorney's fees would have undermined its other financial orders. See *Bornemann* v. *Bornemann*, supra, 245 Conn. 544. Accordingly, we conclude that the court did not abuse its discretion in ordering the defendant to pay the plaintiff $8000 in attorney's fees.

IV

The defendant's fourth claim is that the court erred when it denied his motions for contempt. Specifically, the defendant claims the plaintiff violated automatic

court orders pursuant to Practice Book § 25-5 when she removed funds from the parties' joint banking accounts and used those moneys, and that the evidence does not support the court's failure to find the plaintiff in contempt. We reject this claim.

We reiterate the relevant legal standards. "A finding of contempt is a question of fact, and our standard of review is to determine whether the court abused its discretion in [finding] that the actions or inactions of the [alleged contemnor] were in contempt of a court order. . . . [T]he credibility of witnesses, the findings of fact and the drawing of inferences are all within the province of the trier of fact. . . . We review the findings to determine whether they could legally and reasonably be found, thereby establishing that the trial court could reasonably have concluded as it did." (Internal quotation marks omitted.) *O'Connell* v. *O'Connell*, 101 Conn. App. 516, 521, 922 A.2d 293 (2007). "Great weight is given to the conclusions of the trial court which had the opportunity to observe directly the parties and the witnesses." *Gallo* v. *Gallo*, 184 Conn. 36, 44, 440 A.2d 782 (1981). Finally, among other things, the automatic orders pursuant to Practice Book § 25-5 (b) prohibit parties from "incur[ring] unreasonable debts" and removing funds "except in the usual course of business or for customary and usual household expenses or for reasonable attorney's fees in connection with th[e] action."

The court's memorandum of decision reflects that it analyzed each of the contested withdrawals and expenditures and concluded that each was a usual household expense or not an unreasonable debt. The plaintiff used the moneys to meet her basic needs.

The defendant does not claim that the record is bereft of any evidence to support the court's findings. Rather, the defendant recites in his brief the various contrasting

evidence presented at trial and claims that the court should have ruled in his favor on disputed facts. "As is often stated, we do not reverse the factual findings of the trial court unless they are clearly erroneous and find *no* support in the evidence." (Emphasis in original; internal quotation marks omitted.) *Lynch* v. *Lynch*, supra, 135 Conn. App. 47.[6] The plaintiff's testimony and exhibits support the findings of the trial court. See *Gallo* v. *Gallo*, supra, 184 Conn. 44. On the basis of these findings, the trial court reasonably could have concluded that the plaintiff did not violate the automatic orders pursuant to Practice Book § 25-5. See *O'Connell* v. *O'Connell*, supra, 101 Conn. App. 521. Accordingly, the defendant's claim fails.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[6] Although the defendant claims that the orders fail to account for certain moneys, any deficiency in the record falls on the defendant. See footnote 5 of this opinion.