******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JAMES W. TALBOT *v.* SHARON R. TALBOT
(AC 35032)

Beach, Bear and West, Js.

*Argued November 19, 2013—officially released February 18, 2014*

(Appeal from Superior Court, judicial district of
Stamford-Norwalk, Emons, J.)

*Dana M. Hrelic*, with whom were *Kenneth J. Bartschi* and, on the brief, *Brendon P. Levesque*, for the appellant (plaintiff).

*James H. Lee*, with whom, on the brief, was *Kirk A. Bennett*, for the appellee (defendant).

*Opinion*

BEAR, J. The plaintiff, James W. Talbot, appeals from the judgment of the trial court denying his postjudgment motion for modification of alimony, finding him in contempt, and awarding counsel fees to the defendant, Sharon R. Talbot. On appeal, the plaintiff claims that the court committed error by (1) denying his motion for modification of alimony despite the uncontroverted evidence that there had been a substantial change in circumstances, and, instead, basing its denial on the fact that the defendant continues to provide care to the parties' forty-two year old daughter who has Down syndrome, (2) finding him in contempt for failing to pay the full amount of the alimony awarded to the defendant, and (3) ordering him to pay the defendant's counsel fees for the prosecution of her motion for contempt and for this appeal. We affirm the judgment of the trial court.

The following facts are relevant to the issues on appeal. The plaintiff and the defendant were married on December 5, 1965, and there were five children born of the marriage, all of whom are over the age of majority. The parties' oldest daughter has Down syndrome and is in the care of the defendant. The court rendered a judgment of dissolution of marriage on June 17, 2008. At that time, the plaintiff was sixty-five years old, and the defendant was sixty-three years old. The court ordered, inter alia, the plaintiff to pay to the defendant alimony in the amount of $8000 per month, plus the mortgage, home equity line of credit, real estate taxes, insurance premiums, oil, water, gas, electricity and ordinary maintenance costs of the marital home, wherein the defendant resided and the plaintiff maintained a medical office, until the property was sold. The court also ordered that the plaintiff's alimony obligation would increase to $12,000 per month after the marital residence was sold. The plaintiff's purported gross income at the time of the marital dissolution was $275,000, his taxes were $30,000, and his purported net income was $245,000.[1]

On July 27, 2011, the plaintiff filed a postjudgment motion for modification of alimony on the ground that there had been a substantial change in circumstances due to a significant reduction in his annual income and a life-threatening decline in his health, and the defendant filed an objection thereto. On August 30, 2011, the defendant filed a motion for contempt on the grounds that the plaintiff had failed to pay the mortgage on the marital home and that he had "informed the defendant that he will no longer be making alimony payments as ordered by [the] court." The parties agreed that the motions could be heard together.

At the start of the hearing on the parties' motions on June 29, 2012, they submitted their financial affidavits.

The plaintiff's affidavit was dated June 20, 2012, wherein he attested that his gross *and* net income was $15,000 per month from employment, that he received $2009 per month from social security, and that his "Total Net Income Per Month" was $17,009, which equals $204,108 per year.[2] The defendant's affidavit was dated June 29, 2012, wherein she attested that, not including alimony, her monthly gross income was $1200 from employment, that she received $853 from social security, and that her net income after taxes was $1775.31, which equals an annual gross income of $21,303.72. Following a hearing on the parties' motions, the court, on August 8, 2012, denied the plaintiff's postjudgment motion for modification of alimony, finding, "[a]fter considering the statutory criterion in [General Statutes §] 46b-82," that the plaintiff's "short, although very serious illness," did not reflect a significant change in circumstances that would warrant a modification and that his "gross receipts are still high enough that he can afford to pay [the defendant] at least $8000 a month." The court also found that the plaintiff was in contempt because the "reduction in his gross income" was not significant enough to justify his reduction in payments to the defendant and that his decision not to pay the defendant "was intentional and rather outrageous." Additionally, the court found that the plaintiff had failed to curtail his spending and that "rather than pay [the defendant] who provides sole custody and care of [their forty-two] year old . . . daughter [with Down syndrome]," he "made payments for all personal reasons . . . ." Accordingly, the court ordered the plaintiff to continue to pay the defendant $8000 per month in alimony and also to pay $5000 per month on the $54,000 arrearage that had accrued and the defendant's attorney's fees.

On August 27, 2012, the plaintiff filed a motion to reargue, requesting that the court reconsider its decision on the grounds that the court improperly used the plaintiff's gross income rather than his net income, that it had not given consideration to the plaintiff's health and advanced age, and that it improperly applied a de novo standard of review to the motion for modification rather than examine whether there had been a substantial change in circumstance. On August 31, 2012, the court denied the plaintiff's motion to reargue. On September 12, 2012, the plaintiff filed the present appeal. Following the plaintiff's filing of his appeal, the defendant filed a motion with the trial court requesting that the plaintiff be required to pay her appellate counsel fees in the anticipated amount of $25,000. On December 18, 2012, following a hearing on the defendant's motion, the court granted the motion in an oral decision. The plaintiff has amended his appeal to include this ruling. Additional facts will be set forth as necessary.

I

The plaintiff claims that the court committed error

when it denied his motion for modification of alimony because he provided uncontroverted evidence that there had been a substantial change in circumstances warranting a modification. He argues that the court improperly based its decision on the fact that the defendant provides care to the parties' forty-two year old daughter who has Down syndrome, rather than on whether there had been a substantial change in circumstances. We are not persuaded.

"An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action." (Internal quotation marks omitted.) *McRae* v. *McRae*, 139 Conn. App. 75, 80, 54 A.3d 1049 (2012).

"General Statutes § 46b-86 governs the modification or termination of an alimony or support order after the date of a dissolution judgment. When . . . the disputed issue is alimony, the applicable provision of the statute is § 46b-86 (a), which provides that a final order for alimony may be modified by the trial court upon a showing of a substantial change in the circumstances of either party. . . . Under that statutory provision, the party seeking the modification bears the burden of demonstrating that such a change has occurred. . . . Alimony decrees may only be modified upon proof that relevant circumstances have changed since the original decree was granted. . . . In general the same sorts of [criteria] are relevant in deciding whether the decree may be modified as are relevant in making the initial award of alimony. They have chiefly to do with the needs and financial resources of the parties. . . . To obtain a modification, the moving party must demonstrate that circumstances have changed since the last court order such that it would be unjust or inequitable to hold either party to it. Because the establishment of changed circumstances is a condition precedent to a party's relief, it is pertinent for the trial court to inquire as to what, if any, new circumstance warrants a modification of the existing order. In making such an inquiry, the trial court's discretion is essential." (Internal quotation marks omitted.) Id., 82–83.

The plaintiff argues that the court, instead of examining whether the plaintiff had established a substantial change in circumstances that would warrant a modification of his alimony obligation, improperly "considered the presence of the parties' adult daughter in the defendant's home" when denying the motion for modification. He argues that this case is directly on point with *Loughlin* v. *Loughlin*, 280 Conn. 632, 660, 910 A.2d 963 (2006), a case in which the trial court improperly had

considered the presence of the parties' adult children and grandchild in the home when making its initial alimony award. He contends that, in the present case, the court made the same error by basing the denial of the plaintiff's motion for modification on the fact that the defendant was caring for the parties' disabled adult daughter.

The plaintiff further argues that he established uncontroverted evidence of a substantial change in circumstances that would warrant a modification of his alimony obligation, which the court ignored. Specifically, he states that "the uncontroverted evidence showed that the plaintiff suffered from a liver disorder which caused him to constantly experience severe fatigue, to lose thirty pounds, and ultimately to have a liver transplant. Both before and after his liver transplant, he was unable to work a full schedule or go into the office regularly. Where, at the time of the 2008 dissolution [judgment], he was working four ten to eleven hour days per week, he now, after the transplant, could work only two and a half to three part-time days per week. This reduced schedule continues to this day. . . . [A]t the time of trial, the plaintiff was grossing an income of only $15,000 per month. His adjusted gross income was thus approximately $180,000. By contrast, [his] gross adjusted income at the time of the dissolution [judgment] was approximately $275,000. Put simply, these uncontroverted numbers show that due to circumstances outside of his control—namely, his illness and liver transplant—the plaintiff's gross . . . income [was] substantially reduced, necessitating a downward modification of alimony by the court." We are not persuaded.

At the time of the dissolution judgment, the court found that "[t]he plaintiff's financial affidavit . . . list[ed] gross annual income as $275,000 (estimated) less taxes [and Federal Insurance Contributions Act withholdings] of $30,000, and net income per year of $245,000 or $20,416 monthly." This finding is supported by the financial affidavit contained in the record. The defendant's financial affidavit from the time of the dissolution judgment reveals that at that time she earned $910 in gross monthly income, minus taxes of $69.63, for a total net monthly income of $840.37.

Despite the plaintiff's arguments on appeal concerning his testimony at the hearing on the parties' motions, during the hearing, the parties each submitted to the court financial affidavits, both of which were dated in the latter part of June, 2012.[3] In the plaintiff's affidavit, he attested that his gross *and* net income was $15,000 per month from employment, that he received $2009 per month from social security, and that his "Total *Net Income* Per Month" was $17,009, which equals a gross and net annual income of $204,108.[4] (Emphasis added.) In the defendant's affidavit, she attested that, not includ-

ing alimony, her gross monthly income was $1200 from employment and $853 from social security, and that her net monthly income was $1775.31, which equals a net annual income of $21,303.72.

In rendering its decision, the court specifically stated in its oral decision that it had considered § 46b-82, that the plaintiff's "short, although very serious illness" did not reflect a significant change in circumstances that would warrant a downward modification and that his "gross receipts [were] still high enough that he [could] afford to pay [the defendant] at least $8000 a month." Although there is a distinction in this case between the plaintiff's gross receipts from his business and his gross personal income, we are not persuaded that the court was referring to the plaintiff's business receipts rather than the gross personal income as reflected on his financial affidavit.[5]

The plaintiff's attested net annual income at the time of the dissolution judgment was $245,000; his attested net (and gross) annual income in June, 2012, was $204,108—or approximately 17 percent less. We conclude that this evidence demonstrates that the court acted within its discretion when it determined that the plaintiff's reduction in income and his illness did not necessitate a finding of a substantial change in circumstances.[6] See generally *Lev* v. *Lev*, 10 Conn. App. 570, 573, 524 A.2d 674 (1987) (concluding that 33 percent reduction in income did not constitute substantial change in circumstances).

Additionally, although the court made remarks concerning the defendant's continued care of the parties' adult daughter, we are not persuaded that it based its decision to deny the plaintiff's motion for modification of alimony on this fact. The court clearly stated that it had considered § 46b-82, that the plaintiff's "short, although very serious illness" did not reflect a significant change in circumstances that would warrant a downward modification and that his "gross receipts [were] still high enough that he [could] afford to pay [the defendant] at least $8000 a month." Although the court could have more thoroughly discussed and set forth the basis for its orders, its failure to do so does not require us to conclude that the court acted improperly or used an improper standard when considering the plaintiff's motion for modification.

## II

The plaintiff next claims that the court erred in finding him in contempt for failing to pay to the defendant the full amount of his alimony obligation. Specifically, he claims that the finding of contempt was an abuse of discretion and that the facts found by the court to support its contempt finding were clearly erroneous. The plaintiff argues that he was unable to pay his alimony obligation because of his health issues and

reduced income and that there was "no evidence to support a finding that [he] was irresponsible and acted outrageously." He further argues that "[i]t is clear that the trial court's finding that [he] behaved 'outrageously' is based in no small part on the fact that the defendant is caring for their 42 year old disabled daughter. Indeed, the court takes [the plaintiff] to task for paying his personal expenses 'rather than [the defendant] who provides sole custody and care of the 42 year old [disabled] daughter.' But . . . the court's consideration of the care of the disabled daughter was improper. Accordingly, it was improper to hold the plaintiff in contempt on the basis of the daughter's care." On the basis of the record before us, we are not persuaded.

In consideration of this issue, we must determine "whether the trial court abused its discretion in issuing . . . a judgment of contempt, which includes a review of the trial court's determination of whether the violation was wilful or excused by a good faith dispute or misunderstanding."[7] *In re Leah S.*, 284 Conn. 685, 694, 935 A.2d 1021 (2007). Additionally, "[w]e review the court's factual findings in the context of a motion for contempt to determine whether they are clearly erroneous." (Internal quotation marks omitted.) *Oldani* v. *Oldani*, 132 Conn. App. 609, 626, 34 A.3d 407 (2011).

Here, the plaintiff contends that, because he was unable to pay the full amount of alimony due to his illness, decreased working schedule and decreased income, his failure to pay was not wilful or outrageous. He also contends that the court based its finding on the fact that the defendant is responsible for the care of the parties' disabled adult daughter, which, he argues, was improper for the court to consider.

The court's June 29, 2012 oral decision is quite short. In it, the court stated in relevant part: "With regard to the contempt, I do hold [the plaintiff] . . . in contempt. I make a finding of contempt. I think that his refusal or his choice not to pay [the defendant] was intentional and rather outrageous. . . . The court finds that [the plaintiff] made some life choices such that he put himself in the position that he's in right now. . . . In the last four years, despite court orders, [the plaintiff] has acted irresponsibly, has incurred heavy debt. . . . It appears to the [c]ourt that prior to October of 2011, he made absolutely no attempt to put the brakes on his spending. . . . [S]ince July, he's made payments for all personal reasons rather than pay [the defendant] who provides sole custody and care of the [parties] daughter . . . ." The court also found that the reduction in his income did not justify his reduction in payments to the defendant.

Essentially, the court found that the plaintiff had the means to comply with the original alimony orders, and, if he was having difficulty, it was the result of his own doing. We again look to the plaintiff's financial affida-

vits, which show a 17 percent reduction in his net income since the dissolution judgment. The plaintiff testified that at the time of the dissolution and shortly thereafter, he typically worked four days per week and "maybe a half day on Friday," and that he currently works two and one-half to three and one-half days per week, but that he also has hired an additional doctor to work one day per week. The record further reveals that he was giving his new wife substantial amounts of money to pay the mortgage and expenses for their new home, which was owned by his new wife. The record reveals that the 4200 square foot home was located on two acres of land in New Canaan, that it had an inground swimming pool and cabana, three bedrooms and five bathrooms, and that the plaintiff, at a "basic minimum," was giving his new wife $14,500 per month to cover "carrying costs" of this home. Additionally, the plaintiff chose, albeit with the agreement of the defendant, not to sell the marital home, which also housed the plaintiff's medical office, after the judgment of dissolution, but to maintain both that home and his new wife's home. The court's consideration of facts such as these was not improper. See *Lev* v. *Lev*, supra, 10 Conn. App. 573 ("court observed that the plaintiff's financial hardship resulted from, among other things, his remarriage and his voluntary commitment of a substantial portion of his net weekly income to pay the mortgage and taxes on a home owned solely by his second wife").

After our careful review of the record, we conclude that the trial court's findings were not clearly erroneous and that the court's determination that the plaintiff willfully failed to comply with the court's alimony orders was not an abuse of discretion.

### III

The plaintiff also claims that the court abused its discretion in awarding the defendant counsel fees for prosecuting the contempt motion and for defending the appeal.[8] The plaintiff argues that there are only two possible legal bases for awarding attorney's fees to the defendant for prosecuting her motion for contempt, one being as a punitive measure under General Statutes § 46b-87 and the other being on the basis of need under General Statutes § 46b-62, both of which, he contends, are improper. The plaintiff also argues that the court improperly awarded fees for defending the appeal "because there is no evidence that the plaintiff has the ability to pay them." Having concluded that the finding of contempt was not improper, we need not consider the plaintiff's claim regarding the court's award of fees for the defendant's prosecution of the contempt motion, as it is within the court's discretion to award attorney's fees as a punitive measure in contempt proceedings. As to the plaintiff's claim regarding appellate counsel fees, we are not persuaded that the court abused its discretion.

"[Section] 46b-62 vests in the trial court the discretion to award attorney's fees in dissolution proceedings. . . . The criteria to be considered in determining such an award include 'the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to [General Statutes §] 46b-81 . . . .' General Statutes § 46b-82 (a). We note that '[i]n making an award of attorney's fees under § 46b-82, [t]he court is not obligated to make express findings on each of these statutory criteria.' . . . Moreover, in divorce cases, it is not uncommon for the court to award attorney's fees regardless of the parties' ability to pay their own fees when the failure to award such fees would undermine prior financial orders. . . . We review the court's awarding of attorney's fees under the abuse of discretion standard. The ultimate issue in our review, therefore, is whether the court reasonably could have concluded as it did."[9] (Citations omitted; footnote omitted.) *Medvey* v. *Medvey*, 98 Conn. App. 278, 287–88, 908 A.2d 1119 (2006); see also *Taylor* v. *Taylor*, 119 Conn. App. 817, 826–27, 990 A.2d 882 (2010) (affirming § 46b-62 award of attorney's fees to defend appeal involving postjudgment motions following dissolution judgment); *Clement* v. *Clement*, 34 Conn. App. 641, 648–49, 643 A.2d 874 (1994) (same).

In this case, the defendant specifically moved for appellate attorney's fees pursuant to § 46b-62. On December 10 and 18, 2012, the court held a hearing on the defendant's motion. The plaintiff focuses on the evidence that the plaintiff submitted in the form of a new financial affidavit in which he averred that he had a monthly gross income of $12,575.94 and a monthly net income of only $6218.44, which included his social security income. He argues that the evidence is "uncontroverted" that, among other things, "his monthly net income is approximately $6200 . . . ." Although the plaintiff's new financial affidavit was before the court, the court was not required to credit this evidence. "Credibility must be assessed . . . not by reading the cold printed record, but by observing firsthand the witness' conduct, demeanor and attitude. . . . An appellate court must defer to the trier of fact's assessment of credibility because [i]t is the [fact finder] . . . [who has] an opportunity to observe the demeanor of the witnesses and the parties; thus [the fact finder] is best able to judge the credibility of the witnesses and to draw necessary inferences therefrom. . . . Because the trial court is the sole arbiter of witness credibility, it has discretion to reject even uncontested evidence." (Citation omitted; internal quotation marks omitted.) *Blum* v. *Blum*, 109 Conn. App. 316, 329, 951 A.2d 587, cert. denied, 289 Conn. 929, 958 A.2d 157 (2008).

In addition to the plaintiff's new financial affidavit, the court heard evidence that the plaintiff had resumed his $8000 monthly alimony payments and that he had begun making $5000 monthly payments on the arrearage, as the court had ordered in its June 12, 2012 oral decision. The court also heard evidence that, after the June, 2012 judgment, the plaintiff paid his attorney a $25,000 retainer, he paid $10,000 to an appellate attorney, and he paid at least $19,000 to another appellate attorney. The plaintiff also acknowledges that he was paying the student loans of one of the parties' children, although the record does not reveal any court order requiring him to do so. In addition to this evidence, the court also had before it the June, 2012 financial affidavit of the plaintiff, wherein he had averred that he had an annual gross and net income of more than $200,000. The record also demonstrates that the defendant's annual income was minimal, that she had relocated from the marital home because foreclosure proceedings had been instituted and she was told that she had to vacate the home by November, 2012, that she no longer was employed, and that she now had the responsibility of paying household expenses that used to be paid by the plaintiff when she resided in the marital home and he had his medical office there.

On the basis of these considerations, we conclude it was not an abuse of discretion for the court to have determined that the plaintiff should be responsible for the defendant's appellate attorney's fees.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] On the first day of the hearing on the pending motions, the plaintiff testified that as of the date of that hearing, he had not filed his tax returns for 2008, 2009, 2010, or 2011. He also testified that as of the date of the earlier dissolution hearing, he had not filed his tax returns for 2003, 2004, 2006, and 2007.

[2] The plaintiff also stated in his affidavit that the amount of his taxes was "undetermined," but that he was "unable to pay" them.

[3] We have been unable to locate in the record any affidavit the plaintiff filed at the time he filed his motion for modification, or, thereafter, for the period when he had his liver transplant and was recovering therefrom. The affidavit the plaintiff filed with the court was dated June 20, 2012, and was signed and sworn to by the plaintiff on June 21, 2012, several months after his surgery and convalescence, and the plaintiff prepared his affidavit to reflect his financial circumstances close to June 20, 2012. Although the plaintiff generally testified to some extent about his income and expenses during his surgery and convalescence, he did not provide the court with comprehensive information in the form of a written financial statement, or affidavit, for the specific period of his surgery and convalescence. The court found, on the basis of the evidence offered by the plaintiff, that he did not prove a substantial change in circumstances during that period.

[4] See footnote 1 of this opinion.

[5] Initially, the plaintiff claimed in his preliminary statement of the issues that the court improperly used his gross income rather than his net income. He voluntarily abandoned that issue, however, when he filed his appellate brief. We note that the plaintiff had submitted a sworn financial affidavit to the trial court that listed his gross and net income as one and the same, and that the court, therefore, properly relied on this required certified document that the plaintiff submitted to it.

[6] We do not mean to imply that a 17 percent reduction in net income could not be a substantial change in circumstances in all cases. Each case must be considered on its own facts.

[7] Generally, the first step in considering whether a court abused its discretion in rendering a judgment of contempt is to determine "whether the underlying order constituted a court order that was sufficiently clear and unambiguous so as to support a judgment of contempt." *In re Leah S.*, 284 Conn. 685, 693, 935 A.2d 1021 (2007). Because there is no claim regarding the clarity or unambiguity of the underlying order, and we conclude that it is clear and unambiguous, we need not evaluate this step further.

[8] The plaintiff does not contest the reasonableness of the attorney's fees.

[9] We also note that, in addition to the factors in § 46b-62 and § 46b-82, litigation misconduct, including a finding of contempt, also may be considered in determining an award of attorney's fees under § 46b-62. See *Gil* v. *Gil*, 110 Conn. App. 798, 808, 956 A.2d 593 (2008).