******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# JENNIFER R. JACOB-DICK *v.* CHARLES H. DICK
## (AC 46535)

Bright, C. J., and Elgo and Cradle, Js.*

*Syllabus*

The defendant appealed from the trial court's judgment granting the plaintiff's postdissolution motion for contempt with respect to the defendant's failure to pay certain child health care expenses. The defendant claimed, inter alia, that the court abused its discretion in finding him in contempt. *Held*:

The trial court abused its discretion in finding the defendant in contempt because, in light of the defendant's payment of all health care expenses specified in the plaintiff's motion for contempt prior to the hearing on the motion, the defendant's conduct could not reasonably be viewed as wilful disobedience of a court order.

This court concluded that, although the defendant's incarceration following the trial court's finding of contempt was improper in light of its conclusion that the trial court abused its discretion in finding him in contempt, the trial court's order that the defendant be taken into custody until the alleged arrearage was purged did not constitute an improper criminal sanction, as by its plain terms the sanction was conditional in nature and allowed the defendant to end the sentence and discharge himself by paying the sum of the arrearage.

Argued November 20, 2024—officially released March 18, 2025

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Fairfield and tried to the court, *Hon. Howard T. Owens, Jr.*, judge trial referee; judgment dissolving the marriage and granting certain other relief in accordance with the parties' settlement agreement; thereafter, the court, *Hon. Eddie Rodriguez, Jr.*, judge trial referee, granted the plaintiff's motion for contempt, and the defendant appealed to this court. *Reversed*; *orders vacated*; *judgment directed*.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

*Dana M. Hrelic*, with whom were *Meagan A. Cauda*, and, on the brief, *Jon T. Kukucka*, for the appellant (defendant).

*Jenna McPartland*, self-represented, filed a brief as the appellee (plaintiff).

*Opinion*

ELGO, J. The defendant, Charles H. Dick, appeals from the judgment of the trial court granting the postjudgment motion for contempt filed by the self-represented plaintiff, Jennifer R. Jacob-Dick, known also as Jenna McPartland. On appeal, the defendant claims that the court (1) abused its discretion in finding him in contempt and (2) imposed an improper criminal sanction. We agree with the defendant's first claim and, accordingly, reverse the judgment of the trial court.

The record discloses the following undisputed facts. The parties married in 2004, and three children were born of the marriage. Following the subsequent breakdown of their marriage, the parties entered into a comprehensive separation agreement that the court incorporated into its judgment of dissolution. Pertinent to this appeal is paragraph 9.2 of that agreement, which obligates each party to pay 50 percent of the children's "reasonable unreimbursed medical, surgical, psychiatric, psychological hospital, dental, optical, and nursing expenses, and the cost of prescriptive drugs . . . ." On October 30, 2015, the court dissolved the marriage, finding that it had broken down irretrievably without attributing fault to either party as to the cause.

On October 13, 2022, the plaintiff filed a postjudgment motion for contempt by completing a form prepared by the Judicial Branch for use in our family courts. See Connecticut Judicial Branch form JD-FM-173. That form asks the applicant to identify the "Court Order and ways the Order has not been followed" and then

instructs in relevant part: "List specific language of the court order you claim is not being followed. Then, explain exactly how the order is not being followed. You must be specific. . . ." The plaintiff nonetheless did not list any specific language from a court order but, rather, stated: "See attached. See Stipulation 328.00, Order 328.10, Agreement/Order 148.00." In a document appended to that form, the plaintiff alleged that the defendant had failed to pay (1) an outstanding arrearage of $500 for child health care expenses, (2) $50 "for contact lenses for the youngest child," and (3) $308.50 "for an eye exam, lens fitting, and contact lenses for [the] same child."[1] The plaintiff concluded her motion by asking the court to hold the defendant in contempt and order him "to pay these expenses . . . ."[2]

The parties appeared before the court, *Hon. Eddie Rodriguez, Jr.*, judge trial referee, on March 22, 2023. When the court inquired as to whether the defendant was representing himself,[3] the defendant replied: "I am here today to try and get this matter resolved and disposed hopefully once and for all. In my estimation of what has been served on me by the plaintiff, it would cost me more money to have an attorney here, compared to the dollar amounts in question. And so just a simple cost benefit analysis I decided to show up myself and I will do my very best under some very difficult circumstances to represent my interests in my case as best as I can."

---

[1] The plaintiff also alleged in her motion that the defendant had failed to comply with his child support obligations. The plaintiff withdrew that claim at the outset of the April 12, 2023 hearing, affirmatively acknowledging that she was "not owed any money in child support."

[2] The total amount of health care expenses specified in the plaintiff's motion for contempt is $858.50.

[3] The defendant appeared in a self-represented capacity before the trial court at the March 22 and April 12, 2023 hearings. He subsequently was represented by counsel at the time of his May 2, 2023 motion for reargument and reconsideration.

In response, the court stated: "I want to advise you that if you're found in contempt, you could be incarcerated . . . ." When the court then informed him that it would entertain a reasonable continuance request, the defendant replied, "[g]iven what Your Honor has just said about incarceration, I would make that request." The court then addressed the plaintiff and stated: "There are certain rules that I have to comply with and one of them, especially when there's a real risk of someone going to jail, is to give that person a last chance to pony up the money . . . ." The court thus continued the matter until April 12, 2023, and cautioned the defendant as follows: "I'll decide your claims and I'll decide [the plaintiff's] claims, and then I'll make a ruling. But you've been forewarned that if I find you in contempt of court, I'll probably incarcerate you. Just beware."

On April 5, 2023, the defendant filed an objection to the motion for contempt, in which he argued, inter alia, that the plaintiff had failed to comply with the requirements of Practice Book § 25-27, as her motion failed to specify "the relevant and specific language of the court orders that the plaintiff claims are being 'wilfully violated' by the defendant."[4] The defendant also claimed that he had made payment to the plaintiff for *all* of the health care expenses specified in her motion for contempt, stating: "The plaintiff has received $858.50 in the form of a Schwab Check #106 as a good faith settlement offer seeking full and final resolution of her claims in her motion for contempt . . . in lieu of costly and time-consuming litigation. As of the filing of this objection, the plaintiff has not yet cashed the check."

---

[4] Practice Book § 25-27 (a) provides in relevant part: "Each motion for contempt must state . . . the date and specific language of the order of the judicial authority on which the motion is based [and] the specific acts alleged to constitute the contempt of that order, including the amount of any arrears claimed due as of the date of the motion or a date specifically identified in the motion . . . ."

The court conducted a hearing on April 12, 2023, at which both parties testified. During her testimony, the plaintiff confirmed that she had received the check from the defendant in the amount of $858.50 prior to the hearing. The plaintiff stated that she "believe[d] that check is intended to . . . cure" her motion for contempt. The plaintiff testified that she had not cashed that check because she "wanted to have a hearing." The plaintiff also alleged that the defendant had failed to pay additional health care expenses beyond those specified in her motion for contempt.[5]

In his testimony, the defendant emphasized that he paid $858.50 to the plaintiff "last week" and that he did so "in the hopes that we could have a swift and simple resolution to this matter." The defendant further testified that he was "at a loss for what obligations . . . I am supposed to fulfill that I have not because I cannot see them specified in the plaintiff's motion [for contempt], and . . . the plaintiff has a check in her hand to cover any and all claimed amounts [in her motion for contempt] . . . ." When the defendant then noted that a $100,000 trust fund had been established for child related expenses in accordance with the parties' separation agreement, the following colloquy ensued:

"The Court: Sir, that's all in the record.

"[The Defendant]: Yes, so—

"The Court: You don't have to take my time to read what's already available in the record. That's not in dispute—

"[The Defendant]: Okay, I was going—

---

[5] The plaintiff testified that the defendant had not paid additional expenses that were incurred subsequent to the filing of her motion for contempt—namely, $299 for two dental bills and $219.98 for an order of contact lens. It is undisputed that the plaintiff did not amend her motion for contempt to include those expenses.

"The Court: Don't interrupt me, man. You're going to get into trouble, and it's not civil contempt. It's called criminal contempt. Don't interrupt a judge when he's talking.

"[The Defendant]: I apologize, Your Honor.

"The Court: Just don't do it.

"[The Defendant]: I apologize, Your Honor. I won't do it.

"The Court: Just don't do it. What you're reading is not necessary. It's a waste of my time. It's a waste of your ex-wife's time. It's a waste of the staff's time."

After the defendant's testimony concluded, the court questioned the plaintiff as follows:

"The Court: Okay, is it your testimony that between March 22 and today, April 12, 2023, you've received the money from [the defendant]?

"[The Plaintiff]: I received some money from [the defendant], yes.

"The Court: You did. And is that the check that you received?

"[The Plaintiff]: That is a check, yes.

"The Court: What is the date of the check?

"[The Plaintiff]: April 4, 2023.

"The Court: And what is the amount of the check?

"[The Plaintiff]: $858.50.

"The Court: Okay."

The court then heard closing arguments from the parties. At the time, the defendant argued that he had "acted in good faith" and reiterated that he had "sent

the plaintiff a check in the amount of $858.50 corresponding to what I understood were the [amounts specified] in her [motion for contempt].''

When closing arguments concluded, the court stated: ''The testimony of the defendant is found to be not credible. He spent more time and effort in delaying payments than he has in being candid with the mother of his children with regard to payment of [health care] expenses, which the court believes to be reasonable. His actions are overwhelmingly, in the court's opinion, done in bad faith to delay making his court-ordered payments in a timely manner. He has engaged historically throughout the history of this case, postjudgment, in obstructing the orders of the court and delaying compliance with court-ordered payments. The court finds [the defendant] in contempt of court. I find an arrearage total . . . of $1377.75. I'm ordering that you be taken into custody until you purge that amount. And the matter is ordered to continue to monitor compliance [on] Wednesday, April 26. Court stands in recess.''[6]

The defendant subsequently filed a motion for reargument and reconsideration, in which he argued, inter alia, that the plaintiff's motion for contempt ''fails to comply with Practice Book § 25-27 which requires that a motion for contempt must state the date and specific

---

[6] The court subsequently issued an order, in which it stated that ''the plaintiff has carried her burden of proof by clear and convincing evidence that the defendant has wilfully violated clear orders of the court.'' The court thus found the defendant in contempt and ordered ''the defendant be committed to the custody of the Commissioner of Correction with a purge bond amount of $1377.75.'' The record before us does not indicate precisely how long the defendant was incarcerated; in her appellate brief, the plaintiff avers that the defendant ''was incarcerated for approximately six hours, in which time he was able to make the correct purge payment.'' Approximately two weeks after the April 12, 2023 hearing, the court entered a supplemental order, which states: ''Upon receipt of the funds for the purge, the Clerk's Office is ordered to disburse $1377.75 to [the plaintiff] by sending the funds to [the plaintiff].''

language of the order [and] the specific acts alleged to constitute contempt of that order . . . .” The defendant also argued that the plaintiff, at the April 12, 2023 hearing, “raised other claims of which the defendant did not have notice . . . . The plaintiff did not amend her motion to include these allegations.” The court summarily denied that motion by order dated May 19, 2023, and this appeal followed.

I

The defendant’s primary contention is that the court abused its discretion in finding him in contempt. On the undisputed facts of this case, we agree.

“To constitute contempt, it is not enough that a party has merely violated a court order; the violation must be wilful. . . . It is the burden of the party seeking an order of contempt to prove, by clear and convincing evidence, both a clear and unambiguous directive to the alleged contemnor and the alleged contemnor’s wilful noncompliance with that directive. . . . [T]he trial court’s determination that the violation was wilful [is governed by] the abuse of discretion standard.” (Citations omitted.) *Puff* v. *Puff*, 334 Conn. 341, 365–66, 222 A.3d 493 (2020); see also *Ramin* v. *Ramin*, 281 Conn. 324, 336, 915 A.2d 790 (2007) (“[t]he abuse of discretion standard applies to a trial court’s decision on a motion for contempt”). We review the factual findings that underlie a court’s contempt determination pursuant to the clearly erroneous standard. See *Talbot* v. *Talbot*, 148 Conn. App. 279, 289, 85 A.3d 40, cert. denied, 311 Conn. 954, 97 A.3d 984 (2014).

The appellate courts of this state often are presented with complex and challenging claims. This is not one of them. In her motion for contempt, the plaintiff specifically alleged that the defendant failed to pay a total of $858.50 in child health care expenses. The record

unequivocally demonstrates that the defendant tendered payment in that amount to the plaintiff more than one week *prior* to the contempt hearing, as the plaintiff repeatedly acknowledged in her testimony. In light of that admission, the court's finding of wilful noncompliance cannot stand.

We are particularly troubled by the fact that, after the plaintiff admitted on cross-examination that she received a check from the defendant in the amount of $858.50 prior to the April 12, 2023 hearing in what she characterized as an attempt to "cure" her motion for contempt, the court conducted its own brief examination of the plaintiff, in which she confirmed not only her receipt of that check, but the date and amount thereof. In light of the plaintiff's admission that the defendant tendered payment for *all* of the health care expenses specified in her motion for contempt prior to the contempt hearing, the court's failure to acknowledge the defendant's compliance in that regard is inexplicable.

Moreover, the defendant had no notice prior to the April 12, 2023 hearing that the plaintiff would be claiming additional unpaid health care expenses as a basis for her motion for contempt beyond the $858.50 specified therein. Nevertheless, at the outset of the plaintiff's testimony at the hearing, the court stated: "[E]xplain to me what it is that you claim [the defendant] has not paid you with specificity with regard to health care expenses." The defendant, who was self-represented at that time, then stated: "Your Honor, may I ask a question?" The court replied, "No." The plaintiff then proceeded to detail additional health care expenses that were not included in her motion for contempt. See footnote 5 of this opinion.

When the plaintiff finished her testimony on direct examination, the defendant immediately revisited his

previous attempt to obtain clarification from the court regarding the scope of the contempt proceeding:

"[The Defendant]: Is now the time where I can ask Your Honor a question first before I ask her any questions?

"The Court: You're going to ask me a question?

"[The Defendant]: Yeah.

"The Court: About what?

"[The Defendant]: Well, I filed [an objection] to her [motion for contempt] that we are having a discussion on right now. And all the information that was relayed in [the plaintiff's] testimony is not included in the motion [for contempt], so I came here today—well, if I read [her motion for contempt], understanding that her claim for monetary—money that she claimed is owed is only $800, like $830."

In response, the court did not address the substance of defendant's objection and simply stated: "Her testimony is what it is."

The defendant then proceeded to cross-examine the plaintiff in an attempt to ascertain the total amount of claimed health care expenses. When the defendant remarked to the plaintiff that "you testified [that the motion for contempt] does not specify, enumerate or total any dollar amounts owed by the defendant," the court interrupted, stating: "Her testimony does, sir. So, let's move along." The defendant thereafter reiterated in his closing argument that he had "sent the plaintiff a check in the amount of $858.50 corresponding to what I understood were the [amounts specified] in her [motion for contempt]."

Despite the foregoing, the court found the defendant in contempt for having failed to pay a total of $1377.75 in health care expenses, which sum included the $858.50

specified in the plaintiff's motion for contempt. In so doing, the court ignored the uncontroverted fact that the defendant paid the plaintiff $858.50 for those health care expenses *prior* to the contempt hearing, as the plaintiff admitted in her testimony. Furthermore, the court found him in contempt for additional expenses that were not specified in the motion for contempt, in contravention of Practice Book § 25-27; see footnote 4 of this opinion; and principles of due process. See *New Hartford* v. *Connecticut Resources Recovery Authority*, 291 Conn. 489, 500, 970 A.2d 570 (2009) (motion for contempt must set forth alleged misconduct with particularity to comply with due process requirements); *Leonova* v. *Leonov*, 201 Conn. App. 285, 316–17, 242 A.3d 713 (2020) (due process of law requires parties charged with contempt to be advised of charges against them), cert. denied, 336 Conn. 906, 244 A.3d 146 (2021).

Civil contempt is "avoidable through obedience . . . ." *International Union, United Mine Workers of America* v. *Bagwell*, 512 U.S. 821, 827, 114 S. Ct. 2552, 129 L. Ed. 2d 642 (1994). In light of the defendant's payment of all health care expenses specified in the plaintiff's motion for contempt prior to the April 12, 2023 hearing, the defendant's conduct cannot reasonably be viewed as wilful disobedience of a court order. See *Connolly* v. *Connolly*, 191 Conn. 468, 483, 464 A.2d 837 (1983). We therefore conclude that the court abused its discretion in finding the defendant in contempt.

II

The defendant also argues that the court imposed an improper criminal sanction by ordering his immediate incarceration until the arrearage was purged.[7] Although

---

[7] In the introduction section of his principal appellate brief, the defendant relatedly contends that "because the sanctions imposed were . . . criminal in nature . . . expungement of the record of incarceration is also warranted." Apart from that prefatory statement, the defendant provided no mention or analysis of this contention in either his principal or reply brief, rendering it inadequately briefed. See, e.g., *Taylor* v. *Mucci*, 288 Conn. 379,

we agree that his incarceration was improper in light of our conclusion in part I of this opinion, we disagree that the court's order constituted an improper criminal sanction.

We begin by noting that "[t]he court's authority to impose civil contempt penalties arises not from statutory provisions but from the common law. . . . The penalties which may be imposed . . . arise from the inherent power of the court to coerce compliance with its orders. In Connecticut, the court has the authority in civil contempt to impose on the contemnor either incarceration or a fine or both." (Citations omitted.) *Papa* v. *New Haven Federation of Teachers*, 186 Conn. 725, 737–38, 444 A.2d 196 (1982). The abuse of discretion standard governs claims involving the propriety of a civil contempt sanction ordered by the court. See id., 738; *Edmond* v. *Foisey*, 111 Conn. App. 760, 774, 961 A.2d 441 (2008).

As the United States Supreme Court has explained, the critical consideration in determining whether a sanction is civil or criminal in nature is "the character of the relief that the proceeding will afford. If it is for civil contempt the punishment is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court. . . . If the relief provided is a sentence of imprisonment, it is remedial if the defendant stands committed unless and until he performs the affirmative act required by the court's order, and is punitive if the sentence is limited to imprisonment for a definite period." (Citation omitted; internal quotation marks omitted.) *Hicks* v. *Feiock*, 485 U.S. 624, 631–32, 108 S. Ct. 1423, 99 L. Ed. 2d 721 (1988); accord *Ullmann* v. *State*, 230 Conn. 698, 709, 647 A.2d 324 (1994) ("it is

383 n.4, 952 A.2d 776 (2008). We therefore decline to review that abstract assertion.

the nature of the relief itself that is instructive in determining whether a contempt is civil or criminal"). The court emphasized that "the conditional nature of the punishment renders the relief civil in nature because the contemnor can end the sentence and discharge himself at any moment by doing what he had previously refused to do." (Internal quotation marks omitted.) *Hicks* v. *Feiock*, supra, 633; see also *Shillitani* v. *United States*, 384 U.S. 364, 368, 86 S. Ct. 1531, 16 L. Ed. 2d 622 (1966) ("[w]hen the [contemnors] carry the keys of their prison in their own pockets . . . the action is essentially a civil remedy designed for the benefit of other parties and has quite properly been exercised for centuries to secure compliance with judicial decrees" (citation omitted; internal quotation marks omitted)); *Mays* v. *Mays*, 193 Conn. 261, 266, 476 A.2d 562 (1984) ("[t]he sanction of confinement until purged" is properly "classified as civil rather than criminal" because "the contemnor [is] in a position to purge himself" (internal quotation marks omitted)).

Bound by that precedent, we conclude that the sanction in the present case was civil in nature. At the conclusion of the hearing, the court found the defendant in contempt and found an arrearage of $1377.75. It then stated to the defendant: "I'm ordering that you be taken into custody until you purge that amount." By its plain terms, that sanction was conditional in nature and allowed the defendant to end the sentence and discharge himself by paying that sum. For that reason, we conclude that the court's order did not constitute an improper criminal sanction.

The judgment of contempt is reversed and the orders stemming from that judgment are vacated, and the case is remanded with direction to deny the plaintiff's October 13, 2022 motion for contempt.

In this opinion the other judges concurred.