******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

LIBBY LIGHT *v.* DAVID GRIMES
(AC 35905)

Gruendel, Lavine and Bear, Js.

*Argued October 20, 2014—officially released March 17, 2015*

(Appeal from Superior Court, judicial district of Stamford-Norwalk, Schofield, J. [dissolution judgment]; Emons, J. [motion for modification, motion for attorney's fees, motion to reargue, motion to open].)

*Barbara M. Schellenberg*, with whom, on the brief, was *Richard L. Albrecht*, the appellant (defendant).

*Gary I. Cohen*, for the appellee (plaintiff).

*Opinion*

BEAR, J. The defendant, David Grimes, appeals from the judgment of the trial court on four postjudgment motions. The defendant claims that the court improperly (1) denied his 2012 motion for modification of unallocated alimony and support, (2) granted the motion of the plaintiff, Libby Light, for attorney's fees and awarded her $20,000, (3) denied the relief sought in his motion for reargument, and (4) denied his motion to open the judgment with respect to unallocated alimony and support. We affirm the judgment of the court denying the defendant's motion for modification of unallocated alimony and support, the defendant's claims on reargument, and the defendant's claims in the motion to open. We reverse the judgment of the court awarding the plaintiff $20,000 in attorney's fees and we remand the matter to the court with direction to vacate that order.

The record reveals the following relevant facts and procedural history. The plaintiff and the defendant were married in December, 1991. They have three children issue of their marriage, born in August, 1996, April, 1999, and August, 2002. At all relevant times, the defendant was a partner at a law firm (employer). After a limited contested hearing, their marriage was dissolved on May 9, 2008. In its memorandum of decision and judgment, the court entered the following unallocated alimony and support order: "Until the death of either party, the plaintiff's remarriage or cohabitation, or twelve years from the date of Judgment, whichever event shall first occur, the defendant shall pay to the plaintiff unallocated alimony and child support the amount of $40,000 per month based upon defendant's income of $1,420,000 per year. The defendant's unallocated alimony and child support obligation shall be reduced by $2,000 per month as each of the two older children attains the age of majority and a final reduction of another $3,000 per month upon the youngest child's attaining the age of majority. . . . The plaintiff shall have a safe harbor with respect to her earnings, income or distributions of $75,000 per calendar year (the 'Safe Harbor Amount'). . . . Should the defendant's obligation to pay alimony to the plaintiff terminate, then either party may petition a court of competent jurisdiction for a determination of the amount of child support that the defendant is obligated to pay the plaintiff for the support of the minor children thereafter."

Thereafter, the defendant sought clarification of the unallocated alimony order and on December 15, 2008, the court ruled that although it would not modify the term of alimony, it would modify the unallocated alimony and support step down by a reduction of $3000 per month as each of the oldest two children reached the age of majority, instead of $2000 per month as previously ordered.[1]

Additional facts and procedural history are set forth with respect to each challenged ruling.

## I

## TRIAL COURT ORDERS

### A

### The Defendant's Motion for Modification of the Unallocated Alimony Order and the Plaintiff's Motion for Attorney's Fees

On August 14, 2012, the defendant filed his third motion for modification of unallocated alimony and support.[2] He sought a reduction of the May 9, 2008 order of unallocated alimony and support rendered in connection with the dissolution judgment.[3] He alleged that the court, "after trial, had entered a decree of dissolution of marriage and ordered, *inter alia*, that 'the defendant shall pay to the plaintiff unallocated alimony and child support, [in] the amount of $40,000 per month, based upon defendant's income of $1,420,000 per year.'" He also alleged that there had "been a substantial downward change in [his] financial circumstances . . . in that his annual income will be substantially reduced."[4]

On February 19, 2013, the plaintiff filed a motion for attorney's fees, making reference to the defendant's then pending motion for modification. She "move[d] under [General Statutes § 46b-62] that the defendant be required to pay a reasonable sum for [her] fees and expenses incurred in defending against the defendant's motion."

On April 4, 2013, the court commenced the hearing on the pending motions. The modification hearing continued and concluded on May 6, 2013. On that day, the court orally rendered its findings and orders as follows: "The court finds that [the defendant] has not proven that he has experienced a substantial change in circumstances given the ground in his motion that his income amounted to a substantial change in circumstance. . . . [I]n light of this motion [for modification] that the court considers wasteful and on the border of being frivolous, although I'm not sure it goes over the line to frivolous, but it, certainly, was a wasteful motion, the court is going to order that he pay [the plaintiff's] attorney's fees in the amount of $20,000."

### B

### The Defendant's Motion for Reargument

On May 24, 2013, the defendant filed a motion to reargue. The defendant sought reargument and reconsideration of the court's denial of his motion for modification and award of $20,000 to the plaintiff in attorney's fees.

Referring to his August 14, 2012 motion for modification, he alleged that there had been a substantial change in his financial circumstances caused by a significant reduction in his annual income. The defendant alleged that he had testified at the modification hearing that his net monthly distributions from his employer had been reduced from approximately $68,000 in 2008 to approximately $38,000 in 2012 and 2013, and that his total compensation from employment in 2012 was substantially less than the $1,420,000 found by the court in 2008. He also alleged that the plaintiff did not dispute in 2012 that the defendant's total annual income was less than $1,420,000 and that his monthly distributions were less than his $40,000 per month obligation to the plaintiff. He alleged that his March 15, 2013 paystub was admitted into evidence at that hearing and that it listed his total cash income in 2012 as $1,179,627, a 17 percent decrease from his income in 2008. He alleged that at the modification hearing he testified that some of the reduction in his income was due to having to pay increased income taxes because of the expansion of his employer's business into additional states and foreign countries. Additional reasons for the reduction in his income included a 3 percent increase in his federal tax rate and a doubling of his medical insurance payments since the trial in 2008. He claimed that reargument should be granted because he had demonstrated a substantial reduction in both his monthly and annual income.

With respect to the award of attorney's fees, the defendant alleged that the plaintiff in her motion for attorney's fees did not represent that she lacked the resources to pay them, and that six days after she filed her motion, the plaintiff paid $26,000 in cash for a new Lexus hybrid automobile. Additionally, he pointed out that the plaintiff's April 2, 2013 financial affidavit showed assets of approximately $1,300,000, and cash of approximately $100,000. The defendant argued that the reason expressed by the court for its award of attorney's fees was legally improper and that the evidence demonstrated the plaintiff was financially able to pay her own attorney's fees. The defendant also argued that the plaintiff had sought fees pursuant to § 46b-62, and there was no basis on which to award fees to her pursuant to that statute. See, e.g., *Turgeon* v. *Turgeon*, 190 Conn. 269, 280–82, 460 A.2d 1260 (1983). The defendant, however, did refer to and acknowledge the court's inherent authority to award attorney's fees in certain specific circumstances of litigation misconduct. See *Berzins* v. *Berzins*, 306 Conn. 651, 51 A.3d 941 (2012); *Maris* v. *McGrath*, 269 Conn. 834, 850 A.2d 133 (2004).[5] The defendant claimed that reargument should be granted because the plaintiff was financially able to pay her own attorney's fees. The court granted the motion to reargue and scheduled a hearing on July 8, 2013.

At the modification hearing, the defendant had introduced and had been cross-examined about a K-1 tax form from his employer relating to his 2012 income. That cross-examination focused on the $1,292,389 amount on that tax form described as withdrawals and distributions that, when subtracted from his 2008 income of $1,420,000, resulted in a $127,611, or 8.99 percent, reduction in income.[6] At the modification hearing, the defendant did not object to or correct the plaintiff's focus on and use of the $1,292,389 amount, or the calculations derived from the use of that amount. In fact, it was not until the reargument hearing that the defendant objected to the plaintiff's focus on and use of the $1,292,389 amount and claimed that another, smaller amount—$1,192,389—on the K-1 tax form was the correct amount to be used for determining the reduction in his annual income between 2008 and 2012. Notably, this amount was $12,761.47 greater than the 2012 total cash income of $1,179,627.53 set forth on the March 15, 2013 paystub. The defendant conceded at the reargument hearing that he had not raised any claim based on the $1,192,389 amount at the modification hearing.[7] Although the court granted the defendant's motion to reargue, it denied the relief requested.

The defendant appealed from the court's judgment denying his motion for modification, granting the plaintiff's motion for attorney's fees, and denying the relief requested in his motion for reargument.

C

The Defendant's Motion to Open

On October 16, 2013, the defendant filed a motion to open judgment with the trial court pursuant to General Statutes § 52-212a and Practice Book § 17-4, which was heard on December 2, 2013. He asserted that there was "compelling new evidence regarding his income." The new evidence that the defendant sought to present was his 2012 income tax returns, which had not been completed at the time of the previous hearings. He also sought to present the testimony of James S. Whiting, the accountant who prepared his tax returns from 2006 through 2012. As an offer of proof, the defendant alleged that Whiting was prepared to testify that the defendant's total income for 2012 was $1,194,437, and that the line of the K-1 tax form utilized by the plaintiff and the court in the modification hearing was irrelevant to the defendant's income calculation. The plaintiff opposed the defendant's motion, claiming that the defendant's income tax returns did not constitute new evidence and that the exhibits attached to the motion should be stricken.

At the hearing on the motion to open, the defendant argued that he did not have to rely on newly discovered evidence, but rather was relying on a mathematical mistake. The plaintiff asserted that in order to present

new evidence, a party has to show that the evidence sought to be introduced was not available at the time of the original hearing, and that could not be the case where the defendant introduced the K-1 tax form with the relevant information in the modification hearing. After hearing the parties, the court denied the motion to open, concluding as a matter of law that the defendant had "failed to allege anything at this point that was not available at the time of the [modification] hearing."

The defendant filed an amended appeal from the court's judgment denying his motion to open.

## II

### CLAIMS ON APPEAL

#### A

#### The Defendant's Motion for Modification of the Unallocated Alimony Order

The defendant first claims that the court improperly denied his 2012 motion for modification of the unallocated alimony and support order. The defendant argues that the court improperly denied his motion for modification as wasteful and bordering on being frivolous, especially where he presented credible evidence of a significant decrease in his gross and net incomes, and his continual need to borrow money to meet his monthly unallocated alimony and support obligation. He asserts that the court did not correctly apply the law and reach a reasonable conclusion, where the court denied the motion despite his introduction of credible evidence of more than a 15 percent decrease in his gross income, a 20 to 25 percent decrease in his net income, and his need to borrow money to keep abreast of his unallocated alimony obligation. He also asserts that the court reached its decision with no indication that it had considered his evidence regarding his net income. We disagree.

We first set forth the standard of review and relevant legal principles that inform our analysis. "Our review of a trial court's granting or denial of a motion for modification of alimony is governed by the abuse of discretion standard. . . . To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous." (Citation omitted; internal quotation marks omitted.) *Marshall* v. *Marshall*, 151 Conn. App. 638, 655, 97 A.3d 1 (2014). "In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Trial courts have broad discretion in deciding motions for modification." (Internal quotation marks omitted.) *Pite* v. *Pite*, 135 Conn. App. 819, 824, 43 A.3d 229, cert. denied, 306 Conn. 901, 52 A.3d 728 (2012).

"[General Statutes §] 46b-86 governs the modification

or termination of an alimony or support order after the date of a dissolution judgment. When, as in this case, the disputed issue is alimony [or child support], the applicable provision of the statute is § 46b-86 (a),[8] which provides that a final order for alimony may be modified by the trial court upon a showing of a substantial change in the circumstances of either party." (Footnote altered; internal quotation marks omitted.) *Olson* v. *Mohammadu*, 310 Conn. 665, 671–72, 81 A.3d 215 (2013).

"As to the substantial change of circumstances provision of § 46b-86 (a), [w]hen presented with a motion for modification, a court must first determine whether there has been a substantial change in the financial circumstances of one or both of the parties. . . . Second, if the court finds a substantial change in circumstances, it may properly consider the motion and . . . make an order for modification. . . . A party moving for a modification of a child support order must clearly and definitely establish the occurrence of a substantial change in the circumstances of either party that makes the continuation of the prior order unfair and improper. . . . The party seeking modification bears the burden of showing the existence of a substantial change in the circumstances." (Internal quotation marks omitted.) *McKeon* v. *Lennon*, 131 Conn. App. 585, 598, 27 A.3d 436, cert. denied, 303 Conn. 901, 31 A.3d 1178 (2011). "Following [a finding of a substantial change in circumstances], the court then answers the question of modification [of alimony], taking into account the general alimony factors found in [General Statutes] § 46b-82." *Gervais* v. *Gervais*, 91 Conn. App. 840, 854, 882 A.2d 731, cert. denied, 276 Conn. 919, 888 A.2d 88 (2005).

"The power of the trial court to modify the existing order does not, however, include the power to retry issues already decided . . . or to allow the parties to use a motion to modify as an appeal. . . . Rather, the trial court's discretion includes only the power to adapt the order to some distinct and definite change in the circumstances or conditions of the parties." (Internal quotation marks omitted.) *Olson* v. *Mohammadu*, supra, 310 Conn. 673.

We conclude that the court did not abuse its discretion in denying the defendant's motion to modify unallocated alimony and support on the basis of the specific allegations of that motion and on the evidence presented to it by the parties at the hearing on the motion, on which it properly could rely.[9]

B

The Plaintiff's Motion for Attorney's Fees

The defendant next claims that the court improperly granted the plaintiff's motion for attorney's fees and awarded her $20,000. The defendant argues that the court applied an incorrect standard in awarding attorney's fees. He argues that "counsel fees in a postdissolu-

tion action may only be awarded pursuant to statute on financial grounds, or pursuant to the trial court's inherent authority, if there are specific findings that a party's claim is not colorable and that the party otherwise acted in bad faith." The defendant also argues that, even if the court applied the correct standard, there was no evidence to support an award of attorney's fees. We agree with the defendant.

We begin by setting forth the standard of review and legal principles relevant to this claim. "Whether to allow [attorney's] fees . . . and if so in what amount, calls for the exercise of judicial discretion. . . . An abuse of discretion in granting [attorney's] fees will be found only if [an appellate court] determines that the trial court could not reasonably have concluded as it did." (Internal quotation marks omitted.) *Szynkowicz* v. *Szynkowicz*, 140 Conn. App. 525, 539, 59 A.3d 1194 (2013).

In *Berzins* v. *Berzins*, supra, 306 Conn. 661, our Supreme Court noted that "[t]he common law rule in Connecticut, also known as the American Rule, is that attorney's fees and ordinary expenses and burdens of litigation are not allowed to the successful party absent a contractual or statutory exception. . . . One such exception is the inherent authority of a trial court to assess attorney's fees when the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons." (Citation omitted; internal quotation marks omitted.) Id.

Our Supreme Court "explained the narrow scope of this exception in *Maris* v. *McGrath*, supra, 269 Conn. 848, in which [it] upheld a trial court's determination that attorney's fees should be awarded to the defendant because the trial court had found both that the case was 'wholly without merit' and that 'the plaintiff repeatedly had testified untruthfully and in bad faith.' [Our Supreme Court] reiterated principles that [it] previously had articulated indicating that a litigant seeking an award of attorney's fees for the bad faith conduct of the opposing party faces a high hurdle." *Berzins* v. *Berzins*, supra, 306 Conn. 662. In *Maris*, and reiterated in *Berzins*, the court quoted its previous decision in *CFM of Connecticut, Inc.* v. *Chowdhury*, 239 Conn. 375, 393, 685 A.2d 1108 (1996), overruled in part on other grounds by *State* v. *Salmon*, 250 Conn. 147, 154–55, 735 A.2d 333 (1999), stating: "We agree, furthermore, with certain principles articulated by the Second Circuit Court of Appeals in determining whether the bad faith exception applies. To ensure . . . that fear of an award of [attorney's] fees against them will not deter persons with colorable claims from pursuing those claims, we have declined to uphold awards under the bad-faith exception absent both clear evidence that the challenged actions are entirely without color and [are taken] for reasons of harassment or delay or for other improper

purposes . . . and a high degree of specificity in the factual findings of [the] lower courts. . . . Whether a claim is colorable, for purposes of the bad-faith exception, is a matter of whether a reasonable attorney could have concluded that facts supporting the claim might be established, not whether such facts had been established. . . . To determine whether the bad-faith exception applies, the court must assess whether there has been substantive bad faith as exhibited by, for example, a party's use of oppressive tactics or its wilful violations of court orders; [t]he appropriate focus for the court . . . is the conduct of the party in instigating or maintaining the litigation." (Internal quotation marks omitted.) *Berzins* v. *Berzins*, supra, 662. The court held that "*Maris* makes clear that in order to impose sanctions pursuant to its inherent authority, the trial court must find *both* that the litigant's claims were entirely without color *and* that the litigant acted in bad faith." (Emphasis in original.) Id., 663.

In the present case, although the court did find that the defendant's motion for modification was wasteful and bordering on frivolous,[10] the court did not find that the defendant's claims were entirely without color and that he acted in bad faith. We, therefore, reverse the judgment granting the plaintiff's motion for attorney's fees and remand the case with direction to vacate the award of attorney's fees to the plaintiff.

C

The Defendant's Motion for Reargument

The defendant next claims that the court improperly denied the relief sought in his motion for reargument. The defendant argues that the court abused its discretion by failing to correct its mistakes after considering the incorrect financial information.[11] We disagree.

"The standard of review for a court's denial of a motion to reargue is abuse of discretion. . . . [T]he purpose of a reargument is . . . to demonstrate to the court that there is some decision or some principle of law which would have a controlling effect, and which has been overlooked, or that there has been a misapprehension of facts. . . . It also may be used to address . . . claims of law that the [movant] claimed were not addressed by the court. . . . [A] motion to reargue [however] is not to be used as an opportunity to have a second bite of the apple . . . ." (Internal quotation marks omitted.) *Lynch* v. *Lynch*, 153 Conn. App. 208, 244–45, 100 A.3d 968 (2014), cert. denied, 315 Conn. 923, A.3d (2015).

As noted previously in this opinion, the court had before it at the modification hearing conflicting evidence of the defendant's 2012 gross income, including the K-1 tax form and the March 15, 2013 paystub. Except for the defendant's claim in his motion for reargument that the court should have considered the amount of

$1,192,389 instead of the amount of $1,292,389 also set forth on the K-1 tax form, which claim could have been raised by him at the modification hearing, the defendant did not ask the court to consider any overlooked legal authority or claim, or to reconsider a misapprehended fact. He instead asked the court to reevaluate the facts that had been before it during the modification hearing, thus seeking an improper second bite of the apple. We, therefore, conclude that the court did not abuse its discretion in denying the relief sought in the motion for reargument.

D

The Defendant's Motion to Open

The defendant's final claim is that the court improperly denied his motion to open the judgment with respect to unallocated alimony and support. The defendant argues that the court improperly found that there was no new evidence that was not available at the time of the modification hearing. The defendant argues that his 2012 federal income tax return and the affidavit of his accountant constituted new evidence because they were not available at the time of that hearing. We disagree.

"The standard of review on a motion to open a judgment under Practice Book § 17-4 is whether the trial court abused its discretion." *Marut* v. *IndyMac Bank, FSB*, 132 Conn. App. 763, 771, 34 A.3d 439 (2012). "[O]ne of the essential conditions for the granting of such a motion is that the evidence which the party seeks to offer could not have been known and with reasonable diligence produced at the [hearing]." *Stocking* v. *Ives*, 156 Conn. 70, 73, 238 A.2d 421 (1968).

After a thorough review of the record, we conclude that the court did not abuse its discretion in concluding that the defendant did not present new evidence that was not available at the time of the modification hearing, and in denying the motion to open. Each document provided by the defendant at the hearing on the motion to open in relevant part contained, referred to, or was based on information, including information from the K-1 tax form, which was available at the modification hearing. Moreover, there was no proof offered by the defendant that Whiting was not available to testify on the date of the modification hearing. See id., 73 ("if a party upon the filing of a decision unfavorable to him upon an issue which has been litigated at the [hearing] has a right to have the judgment reopened to enable him to offer further testimony upon that issue, which might equally well have been offered at the [hearing], litigation would be prolonged beyond the requirements of a sound public policy" [internal quotation marks omitted]).

The judgment is reversed only as to the award of attorney's fees to the plaintiff, and the case is remanded

with direction to vacate that order. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] The parties also had sought clarification of certain property orders, and of the proper date for valuation of the parties' property because of the postjudgment motions. The defendant argued that the date was not that of the dissolution, but it was instead after the disposition of the postjudgment motions. The court disagreed, and the defendant appealed to this court. This court affirmed the judgment of the court, concluding: "The case at hand involves the valuation of the parties' *marital* assets. The court derives its authority to divide marital assets solely from the statute, which provides that a court may do so *at the time of the entering of a decree dissolving the marriage*. Thus, it stands to reason that the date on which the values of those assets must be determined is the date of the decree, for anything that occurs subsequent to that date is simply not relevant to the value of the *marital* assets. Accordingly, the court properly determined that the date of valuation of the parties' assets is the date of dissolution, May 9, 2008." (Emphasis in original.) *Light* v. *Grimes*, 136 Conn. App. 161, 173–74, 43 A.3d 808, cert. denied, 305 Conn. 924, 47 A.3d 885 (2012).

[2] On February 6, 2009, the defendant filed a postjudgment motion for modification of unallocated alimony and support. He alleged that at the time of the dissolution trial his gross monthly distributions from employment were $68,875. He further alleged that there had been a substantial change in his financial circumstances, including but not limited to a monthly cap of $40,000 on his distributions, commencing on February 1, 2009, for the period of February 1 through August 31, 2009, and for those months in future years, and that his employer was going to require him to contribute additional capital to it in order to maintain his status as an equity partner. He also alleged that his employer proposed to make a catch-up distribution to him on September 15 of each year, if it had sufficient cash to do so. He explained that he sought only to change the amount of the monthly payments due in February through August, but not the total annual amount of the payments. On July 31, 2009, the court granted the defendant's motion for modification retroactive to February 19, 2009, ordering a payment of $28,000 for August, 2009, $40,000 per month thereafter, with a "catch up" payment in January, 2010.

On August 18, 2009, the defendant filed a second motion for modification, postjudgment, of his monthly unallocated alimony and support payments. The defendant, in relevant part, alleged that his gross monthly income between February 1, 2009 and August 31, 2009, had been reduced from $69,750 to $40,000 and that the same reduction would occur between January 1, 2010, and August 31, 2010. The defendant further alleged that when the original monthly draw of $69,750 was restored, it would be subject to mandatory withholding of approximately $28,014 per month, netting the defendant approximately $41,736 per month, from which he was required to pay the plaintiff $40,000 per month as well as support himself. He alleged that his changed monthly distributions constituted a substantial change in circumstances and that the July 31, 2009 order of the court ought to be modified effective August 1, 2009. On February 4, 2010, the court denied that motion for modification. The court subsequently granted the defendant's motion for reargument of its denial. On June 22, 2010, the court heard reargument, including testimony, on that motion. At that hearing the defendant reiterated his claim that he was not seeking a reduction in the total annual alimony payment. He was, however, requesting a modification of the monthly amount to be paid because of what he described as a mandatory withholding of approximately $28,014.00 from his monthly distribution of $69,750.00, which left him with a $41,736.00 net distribution per month. He alleged that the decrease in his regular monthly income constituted a substantial change in circumstances sufficient to warrant a reduction in the monthly order, but not the total annual order. He stated that at some point the mandatory withholding would be repaid to him resulting in no decrease to his total annual income. On August 19, 2010, the court again denied the motion and set forth the following: "The court acknowledges that this is an unusual request. The court has no evidence of when or how the shortfall to the plaintiff will be paid. The court has reviewed the current financial affidavits of the plaintiff and defendant. To order a reduction in the monthly payment would severely penalize the plaintiff and parties' children. This is a budgeting problem which is not a function of the court. The current order remains in effect."

[3] Neither party has claimed in this appeal that the date from which the requested modification should be measured is other than the date of the final dissolution, May 9, 2008.

[4] We note that in light of the defendant's reference to the court's finding that as of May 9, 2008, his annual gross income was $1,420,000, it is not surprising that, at the modification hearing, the parties and the court focused on the alleged substantial reduction in that annual income amount.

[5] We note that at the reargument hearing, the court stated: "[T]he court found that the entire [modification] hearing and the entire premise based on what the court heard was wasteful, wasteful of everybody's time and for that reason the court awarded attorney's fees. And I have yet to understand from your argument what is wrong with that other than the fact that your client doesn't like it."

[6] For clarity during the modification hearing, the parties seem to have rounded the numbers, using $1,420,000, $1,293,000 and calculated a difference of $127,000, and a reduction of 8.94 percent.

[7] We note the following colloquy between the court and the defendant's attorney regarding the use of the $1,292,389 amount:

"The Court: Counsel, nobody brought that up at the trial level; did they?

"[The defendant's attorney]: I didn't bring that up to Your Honor. . . .

"[The defendant's attorney]: My client points out that the cash number on the K-1 was [$1,192,389] and that is the correct number that should have been used by [the plaintiff's attorney] . . . . Your Honor did grant reargument, I think that opens the door to that.

"The Court: I don't.

"[The defendant's attorney]: I understand.

"The Court: The court has granted your motion to reargue and denies your request for relief. Thank you."

[8] General Statutes § 46b-86 (a) provides in relevant part: "Unless and to the extent that the decree precludes modification, any final order for the periodic payment of permanent alimony or support . . . may, at any time thereafter, be continued, set aside, altered or modified by the court upon a showing of a substantial change in the circumstances of either party . . . . If a court, after hearing, finds that a substantial change in circumstances of either party has occurred, the court shall determine what modification of alimony, if any, is appropriate, considering the criteria set forth in section 46b-82."

[9] Additionally, we note that during the hearing on the motion to open, the court stated that even if the reduction in the defendant's income had been 15 or 16 percent, as claimed by the defendant, it would not have modified the unallocated alimony and support order. See *Talbot* v. *Talbot*, 148 Conn. App. 279, 287–88, 85 A.3d 40 (evidence demonstrated that court acted within its discretion when it determined that plaintiff's 17 percent reduction in income and his illness did not necessitate finding of substantial change in circumstances), cert. denied, 311 Conn. 954, 97 A.3d 984 (2014). Since this issue did not arise during the modification hearing, we are not required to determine if the court's additional finding in support of its ruling constituted an abuse of discretion.

[10] From our review of the motion to modify and the evidence and arguments presented by both parties at the hearing on that motion, we are not persuaded that these findings are clearly erroneous.

[11] To the extent that the motion for reargument addressed the issue of the attorney's fees awarded to the plaintiff, we addressed that claim in part II B of this opinion.